FILED

OCT 2 7 2015
OCT 27 2015
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DISTRICT

|  |  |
|---|---|
| CHRISTOPHER STOLLER and MICHAEL STOLLER, | ) ) ) |
| Plaintiffs, | ) ) |
| V. | ) ) ) |
| OCWEN FINANCIAL CORPORATION, WILLIAM C. ERBEY, RONALD FARIS, JOHN V. BRITTI, TIMOTH HAYES, RICHARD COOPERSTEIN, BARRY WISH, CATHERINE DONDZILLA, ALAN BOWERS, PHYLIS CALDWELL, RONALD KORN, WILLIAM LACY, ROBERT SALCETTI, DEFOREST SOCARIES, PREMIUM TITLE SERVICES, INC., WESTERN PROGRESSIVE ARIZONA, INC., ALTISOURCE PORTFOLIO, WILLIAM SHEPRO, KEVIN WILCOX, JOSEPH SMITH, OFFICE OF THE MORTGAGE OVERSIGHT, BRADLEY ARANT BOULT CUMMINGS, LLP, JOHN GRENIE, ROBERT MADDOX, J. RILEY KEY, DOUGLAS PATIN, DANA LUMSDEN, PHIL BUTLER, ROBERT PATTERSON, KIMBERLY MARTIN, MARGARET OERTLING GRIPPLES, WRIGHT FINLAY & ZAK, LLP, PHILLIP WALITER, ROBIN WRIGHT, T. ROBERT FINLAY, JONATHAN ZAK, KIM LEPORA, TIMOTHY ANDREU, MICHAEL COGAN, SHARON DOCHERTY, ROBERT GLENN, MARK HANLEY, ROBERT RASMUSSIN, EDWIN RICE, ALYSA WARD, CHIRAG PATEL, JOHN BOMBELLA, and JONN DOES 1-10, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

## PLAINTIFFS' COMPLAINT AT LAW and JURY DEMAND

15 cv 9527
JUDGE KENDALL
MAGISTRATE JUDGE COLE

## PLAINTIFFS' COMPLAINT AT LAW and JURY DEMAND

COMES NOW, Plaintiffs Christopher Stoller, 66, a disabled senior citizen and Michael Stoller[1], a disabled person under the Americans for Disability Act (ADA) and for their Complaint against the above listed Defendant now states as follows:

### NATURE OF ACTION

This action is brought against the Defendants for declaratory and injunctive relief and damages from racketeering, conspiracy to engage in a pattern of racketeering activity and related claims, violation of Rehabilitation Act, the Housing Act of 1937, 42 U.S.C §1437(d)(1) conspiracy, aiding and abetting, infliction of emotional distress, fraud, willful and wanton misconduct, negligence, retaliation, deceptive trade practices, abuse of process, violation under the Fair Debt Collection Practice Act (FDCPA) 15 U.S.C. §1692 et seq, violation of discharge injunction 11 U.S.C. §524, violation of Civil Rights under 42 U.S.C. §1983, negligent hiring and supervision, fraudulent misrepresentation/concealment, violation of A.R.S. 13-2314.04, torturous interference with Plaintiffs' contractual rights, conversion, and participation in a RICO enterprise through a pattern of racketeering activity 18 U.S.C. §§1961(5), 1962.

### PARTIES

#### Plaintiffs

Plaintiff Christopher Stoller, 66 is a disabled person and a resident of Cook County, Illinois.

Plaintiff Michael Stoller is a disabled person and a resident of Cook County, Illinois.

---

[1] Assigns all causes of action, remedies or claims under the law of assignment of causes of action to Christopher Stoller (see **Exhibit 1**")

**NATURE OF ACTION**

This action is brought against the Defendants for declaratory and injunctive relief and damages from racketeering, conspiracy to engage in a pattern of racketeering activity and related claims, violation of Rehabilitation Act, the Housing Act of 1937, 42 U.S.C §1437(d)(1) conspiracy, aiding and abetting, infliction of emotional distress, fraud, willful and wanton misconduct, negligence, retaliation, deceptive trade practices, abuse of process, violation under the Fair Debt Collection Practice Act (FDCPA) 15 U.S.C. §1692 et seq, violation of discharge injunction 11 U.S.C. §524, violation of Civil Rights under 42 U.S.C. §1983, negligent hiring and supervision, fraudulent misrepresentation/concealment, violation of A.R.S. 13-2314.04, torturous interference with Plaintiffs' contractual rights, conversion, and participation in a RICO enterprise through a pattern of racketeering activity 18 U.S.C. §§1961(5), 1962.

**PARTIES**

**Plaintiffs**

Plaintiff Christopher Stoller, 66 is a disabled person and a resident of Cook County, Illinois.

Plaintiff Michael Stoller is a disabled person and a resident of Cook County, Illinois.

**Defendants**

1.      Ocwen Financial Corporation ("Ocwen"), 1661 Worthington Road, Suite 100, West Palm Beach, CA 33409, upon information and belief, is at all times herein mentioned a financial institution and/or mortgage loan servicing company, organized and existing under the laws of the United States of America, with its principle place of business located at 2002 Summit Blvd., Suite 600, Atlanta, GA 30319, also doing business as Ocwen Loan Servicing, LLC.

3

2.     William C. Erbey ("Erbey") 1661 Worthington Road, Suite 100, West Palm Beach, CA 33409, individually and in his official capacity, upon information and belief was Chairman and Chief Executive Officer of Ocwen Financial Corporation up and until January of 2015 and was in charge of Ocwen and all of the officers, agents, servants and employees under his control.  Erbey's is liable under the Doctrine of Respondent Superior under the Pinkerton Theory of Liability[2] and the inequitable conduct of the agent[3]  *Pinkerton v. United States of America*, 90 L.Ed 1484, 328 US 640. Agent's inequitable acts may be imputed to the principle whether or not the principle knew of the agent's misconduct.

3.     Ronald M. Faris ("Faris") 1661 Worthington Road, Suite 100, West Palm Beach, CA 33409, President and Board Member, individually and in his official capacity, upon information and belief, is at all times herein mentioned as the President and Board Member of Ocwen Financial Corporation and all of the officers, agents, servants and employees under his control.  Faris is liable under the Doctrine of Respondent Superior under the Pinkerton Theory of Liability and the inequitable conduct of the agent.  Agent's inequitable acts may be imputed to the principle whether or not the principle knew of the agent's misconduct.

4.     John V. Britti ("Britti") 1661 Worthington Road, Suite 100, West Palm Beach, CA 33409, Vice-President, individually and in his official capacity, upon information and belief,

---

[2] Under the Pinkerton Theory of Liability, a defendant may be found guilty of a substantive offence committed by a co-conspirator if the offence was committed in furtherance of the conspiracy at the time the defendant was a member of the conspiracy; this is true even if the defendant neither participated in nor had knowledge of the substantive offense.

[3] A principal seeking specific performance may be bound by an agent's inequitable conduct.  *E.g., Handelman v. Arquilla*, 95 N.E. 2d 910, 913 (Ill. 1951) (rejecting specific performance based on agent's material misrepresentation); *Alexander v. Hughes*, 472 P.2d 818, 819-20 (Or. 1970) (affirming the denial of specific performance when the agent misled the opposing party about the nature of the document signed).  The restatement and the cited cases are consistent with the duties of both agents and principals owed to the third parties in the context of the sale of real property. See *Lombardo v. Albu*, 199 Ariz. 97, 100-01, §§13-15, 14 P.3d 288, 291-92 (2000) (noting common law and regulatory duties).  In addition, the rule that the principal is bound by his agent's conduct is consistent with long-established principles of equity.

is at all times herein mentioned as the Vice-President of Ocwen Financial Corporation and all of the officers, agents, servants and employees under his control. Britti is liable under the Doctrine of Respondent Superior under the Pinkerton Theory of Liability and the inequitable conduct of the agent. Agent's inequitable acts may be imputed to the principle whether or not the principle knew of the agent's misconduct.

5.      Richard L. Cooperstein ("Cooperstein") 1661 Worthington Road, Suite 100, West Palm Beach, CA 33409, CEO, individually and in his official capacity, upon information and belief, is at all times herein mentioned as the CEO of Ocwen Financial Corporation and all of the officers, agents, servants and employees under his control. Cooperstein is liable under the Doctrine of Respondent Superior under the Pinkerton Theory of Liability and the inequitable conduct of the agent. Agent's inequitable acts may be imputed to the principle whether or not the principle knew of the agent's misconduct.

6.      Catherine M. Dondzilla ("Dondzilla") 1661 Worthington Road, Suite 100, West Palm Beach, CA 33409, Senior Vice-President, individually and in her official capacity, upon information and belief, is at all times herein mentioned as the Senior Vice-President of Ocwen Financial Corporation and all of the officers, agents, servants and employees under her control. Dondzilla is liable under the Doctrine of Respondent Superior under the Pinkerton Theory of Liability and the inequitable conduct of the agent. Agent's inequitable acts may be imputed to the principle whether or not the principle knew of the agent's misconduct.

7.      Timothy M. Hayes ("Hayes") 1661 Worthington Road, Suite 100, West Palm Beach, CA 33409, Vice-President and General Counsel Secretary, individually and in his official capacity, upon information and belief, is at all times herein mentioned as the Vice-President and General Counsel Secretary of Ocwen Financial Corporation and all of the officers, agents,

servants and employees under his control. Hayes is liable under the Doctrine of Respondent Superior under the Pinkerton Theory of Liability and the inequitable conduct of the agent. Agent's inequitable acts may be imputed to the principle whether or not the principle knew of the agent's misconduct.

8.      Barry N. Wish ("Wish") 1661 Worthington Road, Suite 100, West Palm Beach, CA 33409, Member of Ocwen Board of Directors, individually and in his official capacity, upon information and belief, is at all times herein mentioned as the Member of Ocwen Board of Directors of Ocwen Financial Corporation and all of the officers, agents, servants and employees under his control. Wish is liable under the Doctrine of Respondent Superior under the Pinkerton Theory of Liability and the inequitable conduct of the agent. Agent's inequitable acts may be imputed to the principle whether or not the principle knew of the agent's misconduct.

9.      Alan J. Bower ("Bower") 1661 Worthington Road, Suite 100, West Palm Beach, CA 33409, Member of Ocwen Board of Directors, individually and in his official capacity, upon information and belief, is at all times herein mentioned as the Member of Ocwen Board of Directors of Ocwen Financial Corporation and all of the officers, agents, servants and employees under his control. Bower is liable under the Doctrine of Respondent Superior under the Pinkerton Theory of Liability and the inequitable conduct of the agent. Agent's inequitable acts may be imputed to the principle whether or not the principle knew of the agent's misconduct.

10.      Phyllis R. Caldwell ("Caldwell") 1661 Worthington Road, Suite 100, West Palm Beach, CA 33409, Member of Ocwen Board of Directors, individually and in her official capacity, upon information and belief, is at all times herein mentioned as the Member of Ocwen Board of Directors of Ocwen Financial Corporation and all of the officers, agents, servants and employees under her control. Caldwell is liable under the Doctrine of Respondent Superior

under the Pinkerton Theory of Liability and the inequitable conduct of the agent. Agent's inequitable acts may be imputed to the principle whether or not the principle knew of the agent's misconduct.

11. Ronald J. Korn ("Korn") 1661 Worthington Road, Suite 100, West Palm Beach, CA 33409, Member of Ocwen Board of Directors, individually and in his official capacity, upon information and belief, is at all times herein mentioned as the Member of Ocwen Board of Directors of Ocwen Financial Corporation and all of the officers, agents, servants and employees under his control. Korn is liable under the Doctrine of Respondent Superior under the Pinkerton Theory of Liability and the inequitable conduct of the agent. Agent's inequitable acts may be imputed to the principle whether or not the principle knew of the agent's misconduct.

12. William H. Lacy ("Lacy") 1661 Worthington Road, Suite 100, West Palm Beach, CA 33409, Member of Ocwen Board of Directors, individually and in his official capacity, upon information and belief, is at all times herein mentioned as the Member of Ocwen Board of Directors of Ocwen Financial Corporation and all of the officers, agents, servants and employees under his control. Lacy is liable under the Doctrine of Respondent Superior under the Pinkerton Theory of Liability and the inequitable conduct of the agent. Agent's inequitable acts may be imputed to the principle whether or not the principle knew of the agent's misconduct.

13. Robert A. Salcetti ("Salcetti") 1661 Worthington Road, Suite 100, West Palm Beach, CA 33409, Member of Ocwen Board of Directors, individually and in his official capacity, upon information and belief, is at all times herein mentioned as the Member of Ocwen Board of Directors of Ocwen Financial Corporation and all of the officers, agents, servants and employees under his control. Salcetti is liable under the Doctrine of Respondent Superior under the Pinkerton Theory of Liability and the inequitable conduct of the agent. Agent's inequitable

acts may be imputed to the principle whether or not the principle knew of the agent's misconduct.

14.     Deforest B. Socaries ("Socaries") 1661 Worthington Road, Suite 100, West Palm Beach, CA 33409, Member of Ocwen Board of Directors, individually and in his official capacity, upon information and belief, is at all times herein mentioned as the Member of Ocwen Board of Directors of Ocwen Financial Corporation and all of the officers, agents, servants and employees under his control. Socaries is liable under the Doctrine of Respondent Superior under the Pinkerton Theory of Liability and the inequitable conduct of the agent. Agent's inequitable acts may be imputed to the principle whether or not the principle knew of the agent's misconduct.

15.     Western Progressive-Arizona, Inc. ("Western Progressive") 1000 Abernathy Road, NE 400 #200, Atlanta, GA 30320, upon information and belief, is at all times herein mentioned a loan servicing company, organized and existing under the laws of the United States of American, with its principle place of business located in Tempe, Arizona and transacting business throughout the United States and set up by Ocwen as a shell entity to unlawfully foreclose on properties that Ocwen regulates. Agent's inequitable acts may be imputed to the principle whether or not the principle knew of the agent's misconduct.

16.     Premium Title Service, Inc. ("Premium") 1000 Abernathy Road, NE 400 #200, Atlanta, GA 30320, upon information and belief, is at all times herein mentioned a "shell" entity set up by Ocwen to insure real estate titles to properties the Ocwen unlawfully forecloses upon which operates out of the same building Ocwen Financial Corporation operates located at 2002 Summit Blvd., Suite 600, Atlanta GZ 30319. Premium is also liable under the Pinkerton Theory

of Liability and that of agency law. Agent's inequitable acts may be imputed to the principle whether or not the principle knew of the agent's misconduct.

17.     Altisource Portfolio Solutions, S.A. ("Altisource") 1000 Abernathy Road, NE 400 #200, Atlanta, GA 30320, upon information and belief is another "shell" entity originally set up by Erbey to act under the color of law to defraud property owners out of their homes by offering their services for financial services corporations which have loaned and/or are servicing mortgage loans to home owners. Altisource operates out of the same location that Owen, Western Progressive and Premium operate out of located at 2002 Summit Blvd., Atlanta, GA 30319. Agent's inequitable acts may be imputed to the principle whether or not the principle knew of the agent's misconduct.

18.     William Shepro ("Shepro") 1000 Abernathy Road, NE 400 #200, Atlanta, GA 30320, individually and as counsel for Altisource despite the fact that Shepro does not have a license to practice law in Georgia or anywhere else for that matter, and is engaged in the unlawful practice of law in violation of the Georgia Rules of Professional Conduct. Shepro is in charge of his crew, all of the officer, agents, servants and employees of Altisource under his control. Shepro advises/consults and is a co-conspirator, conspiring with the Defendant, aiding and abetting the Defendants to defraud the Plaintiff out of his property located at 28437 N. 112th Way, Scottsdale, AZ 85626. Shepro assists the Defendants to conduct a fraudulent foreclosure and non-judicial trustee sale which Shepro knows to be unlawful under the color of law to deprive the Plaintiff of his property rights, due process and equal protection rights without notice. Shepro is liable under the Doctrine of Respondent Superior, the Pinkerton Theory of Liability and under the liability theory that principles may not benefit from the inequitable

conduct of their agents. Agent's inequitable acts may be imputed to the principle whether or not the principle knew of the agent's misconduct.

19.      Kevin J. Wilcox ("Wilcox") 1000 Abernathy Road, NE 400 #200, Atlanta, GA 30320, individually and in his official capacity, upon information and belief at all times herein mentioned, General Counsel and advises/consults with Defendants Erbey, Faris, Britti, Cooperstein, Dondzilla, Hayes, Wish, Bowers, Caldwell, Korn, Lacy, Salcetti, Socaries, Shepro and other Defendants and has conspired with them to deprive the Plaintiff of his due process and equal protection rights as stated in the Complaint, aiding and abetting the Defendants to defraud the Plaintiff of his property rights.  Wilcox is liable under the Doctrine of Respondent Superior, the Pinkerton Theory of Liability and under the liability theory that principles may not benefit from the inequitable conduct of their agents. Agent's inequitable acts may be imputed to the principle whether or not the principle knew of the agent's misconduct.

20.      Office of Mortgage Settlement Oversight, 301 Fayetteville Street, Suite 1801, Raleigh, NC 27601, was responsible to enforce the terms and conditions of the Consent Decree and refused to do so and breached their fiduciary duties and refused to take any remedial action on behalf of the Plaintiff which are prescribed in the Consent Decree to prevent Ocwen from engaging in an unlawful foreclosure against the former owner, Philip Stone, and the subject property located at 28437 N. 112th Way, Scottsdale, AZ.  Mortgage Settlement Oversight is liable under the Doctrine of Respondent Superior, the Pinkerton Theory of Liability and under the liability theory that principles may not benefit from the inequitable conduct of their agents. Agent's inequitable acts may be imputed to the principle whether or not the principle knew of the agent's misconduct.

21.     Joseph Smith, Jr. ("Smith") 301 Fayetteville Street, Suite 1801, Raleigh, NC 27601, individually and in his official capacity as Monitor of the Consent Decree ("**Exhibit 2**") (incorporated herein by reference as if fully copied and attached) issued by Judge Rosemary Collyer on February 26. 2014, in the District of Columbia Case No: 13-cv-2025, Consumer Financial Protection Bureau et al v. Ocwen Financial Corporation and Ocwen Loan Servicing, LLC.   Prior to the filing of this Complaint, Plaintiff contacted the Monitor Smith who is empowered to enforce the terms and conditions of the Consent Decree and refused to do so and breached his fiduciary duties and refused to take any remedial action on behalf of the Plaintiff which are prescribed in the Consent Decree to prevent Ocwen from engaging in an unlawful foreclosure against the former owner, Philip Stone, and the subject property located at 28437 N. 112th Way, Scottsdale, AZ.   Smith is liable under the Doctrine of Respondent Superior, the Pinkerton Theory of Liability and under the liability theory that principles may not benefit from the inequitable conduct of their agents. Agent's inequitable acts may be imputed to the principle whether or not the principle knew of the agent's misconduct.

22.     Bradley Arant Boult Cummings, LLP, Birmingham Office, One Federal Place, 1819 Fifth Avenue North, Birmingham, AL 35203; is at all times herein mentioned as law firm, organized and existing under the laws of the United States with its principle place of business located at One Federal Place, 1819 Fifth Avenue, North Birmingham, AL 35203 and transacts business through the District of Columbia and throughout the United States.   The law firm is used by the Defendants as a criminal enterprise which has executed a pattern of racketeering activity that includes multiple and repeated criminal acts, including numerous acts of real estate theft by unlawfully taking, deception, aiding and abetting Ocwen in conversion and other predicate acts using mail and wire fraud as defined by the Civil RICO statute.   The Defendants'

pattern of racketeering activity share a common target or victim(s) home owners throughout the United States including the State of Arizona and the Plaintiff. Bradley Arant Boult Cummings, LLP, is liable under the Doctrine of Respondent Superior, the Pinkerton Theory of Liability and under the liability theory that principles may not benefit from the inequitable conduct of their agents. Agent's inequitable acts may be imputed to the principle whether or not the principle knew of the agent's misconduct.

23.     John T. Grenie ("Grenie") Birmingham Office, One Federal Place, 1819 Fifth Avenue North, Birmingham, AL 35203, partner in the law firm of  Bradley Arant Boult Cummings, LLP, individually and in his official capacity and at all times mentioned herein as the "Mastermind", "the King Pin" for the RICO enterprise known as  Bradley Arant Boult Cummings, LLP, advises/consults and is a co-conspirator, conspiring with the Defendants, aiding and abetting the Defendants to defraud the Plaintiff out of his property rights  through assisting the Defendants to engage in unlawful non-judicial trustee sale of the Plaintiff's property under the color of the law thereby denying the Plaintiff his due process and equal protection rights.  Grenie is obligated under the partnership liability, and is liable under the Doctrine of Respondent Superior, the Pinkerton Theory of Liability and under the liability theory that principles may not benefit from the inequitable conduct of their agents. Agent's inequitable acts may be imputed to the principle whether or not the principle knew of the agent's misconduct.

24.     Robert R. Maddox ("Maddox") Birmingham Office, One Federal Place, 1819 Fifth Avenue North, Birmingham, AL 35203, partner in the law firm of  Bradley Arant Boult Cummings, LLP, individually and in his official capacity and at all times mentioned herein as the "Mastermind", "the King Pin", for the RICO enterprise known as  Bradley Arant Boult Cummings, LLP, advises/consults and is a co-conspirator, conspiring with the Defendants,

aiding and abetting the Defendants to defraud the Plaintiff out of his property rights through assisting the Defendants to engage in unlawful non-judicial trustee sale of the Plaintiff's property under the color of the law thereby denying the Plaintiff his due process and equal protection rights. Maddox is obligated under the partnership liability, and is liable under the Doctrine of Respondent Superior, the Pinkerton Theory of Liability and under the liability theory that principles may not benefit from the inequitable conduct of their agents. Agent's inequitable acts may be imputed to the principle whether or not the principle knew of the agent's misconduct.

25.     J. Riley Key ("Key") Birmingham Office, One Federal Place, 1819 Fifth Avenue North, Birmingham, AL 35203, partner of the law firm of Bradley Arant Boult Cummings, LLP, individually and in his official capacity and at all times mentioned herein, advises/consults and is a co-conspirator, conspiring with the Defendants, aiding and abetting the Defendants to defraud the Plaintiff out of his property rights through assisting the Defendants to engage in unlawful non-judicial trustee sale of the Plaintiff's property under the color of the law thereby denying the Plaintiff his due process and equal protection rights. Key is liable under the Doctrine of Respondent Superior, the Pinkerton Theory of Liability and under the liability theory that principles may not benefit from the inequitable conduct of their agents. Agent's inequitable acts may be imputed to the principle whether or not the principle knew of the agent's misconduct.

26.     Douglas Patin ("Patin") Birmingham Office, One Federal Place, 1819 Fifth Avenue North, Birmingham, AL 35203, of the law firm of Bradley Arant Boult Cummings, LLP, individually and in his official capacity and at all times mentioned herein, advises/consults and is a co-conspirator, conspiring with the Defendants, aiding and abetting the Defendants to defraud the Plaintiff out of his property rights through assisting the Defendants to engage in unlawful non-judicial trustee sale of the Plaintiff's property under the color of the law thereby

13

denying the Plaintiff his due process and equal protection rights. Patin is liable under the Doctrine of Respondent Superior, the Pinkerton Theory of Liability and under the liability theory that principles may not benefit from the inequitable conduct of their agents. Agent's inequitable acts may be imputed to the principle whether or not the principle knew of the agent's misconduct.

27.    Dana C. Lumsden ("Lumsden") Birmingham Office, One Federal Place, 1819 Fifth Avenue North, Birmingham, AL 35203, of the law firm of Bradley Arant Boult Cummings, LLP, individually and in her official capacity and at all times mentioned herein, advises/consults and is a co-conspirator, conspiring with the Defendants, aiding and abetting the Defendants to defraud the Plaintiff out of his property rights through assisting the Defendants to engage in unlawful non-judicial trustee sale of the Plaintiff's property under the color of the law thereby denying the Plaintiff his due process and equal protection rights. Lumsden is liable under the Doctrine of Respondent Superior, the Pinkerton Theory of Liability and under the liability theory that principles may not benefit from the inequitable conduct of their agents. Agent's inequitable acts may be imputed to the principle whether or not the principle knew of the agent's misconduct.

28.    Phil Butler ("Butler") Birmingham Office, One Federal Place, 1819 Fifth Avenue North, Birmingham, AL 35203, of the law firm of Bradley Arant Boult Cummings, LLP, individually and in his official capacity and at all times mentioned herein, advises/consults and is a co-conspirator, conspiring with the Defendants, aiding and abetting the Defendants to defraud the Plaintiff out of his property rights through assisting the Defendants to engage in unlawful non-judicial trustee sale of the Plaintiff's property under the color of the law thereby denying the Plaintiff his due process and equal protection rights. Butler is liable under the Doctrine of

14

Respondent Superior, the Pinkerton Theory of Liability and under the liability theory that principles may not benefit from the inequitable conduct of their agents. Agent's inequitable acts may be imputed to the principle whether or not the principle knew of the agent's misconduct.

29. Robert Patterson ("Patterson") Birmingham Office, One Federal Place, 1819 Fifth Avenue North, Birmingham, AL 35203, of the law firm of Bradley Arant Boult Cummings, LLP, individually and in his official capacity and at all times mentioned herein, advises/consults and is a co-conspirator, conspiring with the Defendants, aiding and abetting the Defendants to defraud the Plaintiff out of his property rights through assisting the Defendants to engage in unlawful non-judicial trustee sale of the Plaintiff's property under the color of the law thereby denying the Plaintiff his due process and equal protection rights. Patterson is liable under the Doctrine of Respondent Superior, the Pinkerton Theory of Liability and under the liability theory that principles may not benefit from the inequitable conduct of their agents. Agent's inequitable acts may be imputed to the principle whether or not the principle knew of the agent's misconduct.

30. Kimberly B. Martin ("Martin") Birmingham Office, One Federal Place, 1819 Fifth Avenue North, Birmingham, AL 35203, of the law firm of Bradley Arant Boult Cummings, LLP, individually and in her official capacity and at all times mentioned herein, advises/consults and is a co-conspirator, conspiring with the Defendants, aiding and abetting the Defendants to defraud the Plaintiff out of his property rights through assisting the Defendants to engage in unlawful non-judicial trustee sale of the Plaintiff's property under the color of the law thereby denying the Plaintiff his due process and equal protection rights. Martin is liable under the Doctrine of Respondent Superior, the Pinkerton Theory of Liability and under the liability theory that principles may not benefit from the inequitable conduct of their agents. Agent's

inequitable acts may be imputed to the principle whether or not the principle knew of the agent's misconduct.

31.    Margaret Oertling Gripples ("Gripples") Birmingham Office, One Federal Place, 1819 Fifth Avenue North, Birmingham, AL 35203, of the law firm of  Bradley Arant Boult Cummings, LLP, individually and in her official capacity and at all times mentioned herein, advises/consults and is a co-conspirator, conspiring with the Defendants, aiding and abetting the Defendants to defraud the Plaintiff out of his property rights  through assisting the Defendants to engage in unlawful non-judicial trustee sale of the Plaintiff's property under the color of the law thereby denying the Plaintiff his due process and equal protection rights.  Gripples is liable under the Doctrine of Respondent Superior, the Pinkerton Theory of Liability and under the liability theory that principles may not benefit from the inequitable conduct of their agents.   Agent's inequitable acts may be imputed to the principle whether or not the principle knew of the agent's misconduct.

32.    Wright Finlay & Zak, LLP, 4665 MacArthur Court, Suite 200, Newport Beach, CA 92660, is at all times herein mentioned as law firm, organized and existing under the laws of the United States with its principle place of business located at 4665 MacArthur Court, Suite 200, Newport Beach, CA 92660, and transacts business through the District of Columbia and throughout the United States.  The law firm is used by the Defendants as a criminal enterprise which has executed a pattern of racketeering activity that includes multiple and repeated criminal acts, including numerous acts of real estate theft by unlawfully taking, deception, aiding and abetting Ocwen in conversion and other predicate acts using mail and wire fraud as defined by the Civil RICO statute.  The Defendants' pattern of racketeering activity share a common target or victim(s) home owners throughout the United States including the State of Arizona and the

Plaintiff. Wright Finlay & Zak, LLP, is liable under the Doctrine of Respondent Superior, the Pinkerton Theory of Liability and under the liability theory that principles may not benefit from the inequitable conduct of their agents. Agent's inequitable acts may be imputed to the principle whether or not the principle knew of the agent's misconduct.

33.     Phillip W. Waliter ("Waliter") 4665 MacArthur Court, Suite 200, Newport Beach, CA 92660, of the law firm of  Wright Finlay & Zak, LLP, individually and in his official capacity and at all times mentioned herein, advises/consults and is a co-conspirator, conspiring with the Defendants, aiding and abetting the Defendants to defraud the Plaintiff out of his property rights through assisting the Defendants to engage in unlawful non-judicial trustee sale of the Plaintiff's property under the color of the law thereby denying the Plaintiff his due process and equal protection rights. Waliter is liable under the Doctrine of Respondent Superior, the Pinkerton Theory of Liability and under the liability theory that principles may not benefit from the inequitable conduct of their agents. Agent's inequitable acts may be imputed to the principle whether or not the principle knew of the agent's misconduct.

34.     Timothy A. Andreu ("Andreu") 4665 MacArthur Court, Suite 200, Newport Beach, CA 92660, partner of the law firm of  Wright Finlay & Zak, LLP, individually and in his official capacity and at all times mentioned herein, advises/consults and is a co-conspirator, conspiring with the Defendants, aiding and abetting the Defendants to defraud the Plaintiff out of his property rights  through assisting the Defendants to engage in unlawful non-judicial trustee sale of the Plaintiff's property under the color of the law thereby denying the Plaintiff his due process and equal protection rights. Andreu is liable under the Doctrine of Respondent Superior, the Pinkerton Theory of Liability and under the liability theory that principles may not benefit

from the inequitable conduct of their agents. Agent's inequitable acts may be imputed to the principle whether or not the principle knew of the agent's misconduct.

35. Michael B. Colgan ("Colgan") 4665 MacArthur Court, Suite 200, Newport Beach, CA 92660, partner of the law firm of Wright Finlay & Zak, LLP, individually and in his official capacity and at all times mentioned herein, advises/consults and is a co-conspirator, conspiring with the Defendants, aiding and abetting the Defendants to defraud the Plaintiff out of his property rights through assisting the Defendants to engage in unlawful non-judicial trustee sale of the Plaintiff's property under the color of the law thereby denying the Plaintiff his due process and equal protection rights. Colgan is liable under the Doctrine of Respondent Superior, the Pinkerton Theory of Liability and under the liability theory that principles may not benefit from the inequitable conduct of their agents. Agent's inequitable acts may be imputed to the principle whether or not the principle knew of the agent's misconduct.

36. Sharon Docherty ("Docherty") 4665 MacArthur Court, Suite 200, Newport Beach, CA 92660, partner of the law firm of Wright Finlay & Zak, LLP, individually and in her official capacity and at all times mentioned herein, advises/consults and is a co-conspirator, conspiring with the Defendants, aiding and abetting the Defendants to defraud the Plaintiff out of his property rights through assisting the Defendants to engage in unlawful non-judicial trustee sale of the Plaintiff's property under the color of the law thereby denying the Plaintiff his due process and equal protection rights. Docherty is liable under the Doctrine of Respondent Superior, the Pinkerton Theory of Liability and under the liability theory that principles may not benefit from the inequitable conduct of their agents. Agent's inequitable acts may be imputed to the principle whether or not the principle knew of the agent's misconduct.

18

37.     Robert B. Glenn ("Glenn") 4665 MacArthur Court, Suite 200, Newport Beach, CA 92660, partner of the law firm of Wright Finlay & Zak, LLP, individually and in his official capacity and at all times mentioned herein, advises/consults and is a co-conspirator, conspiring with the Defendants, aiding and abetting the Defendants to defraud the Plaintiff out of his property rights through assisting the Defendants to engage in unlawful non-judicial trustee sale of the Plaintiff's property under the color of the law thereby denying the Plaintiff his due process and equal protection rights. Glenn is liable under the Doctrine of Respondent Superior, the Pinkerton Theory of Liability and under the liability theory that principles may not benefit from the inequitable conduct of their agents. Agent's inequitable acts may be imputed to the principle whether or not the principle knew of the agent's misconduct.

38.     Mark A. Hanley ("Hanley") 4665 MacArthur Court, Suite 200, Newport Beach, CA 92660, partner of the law firm of Wright Finlay & Zak, LLP, individually and in his official capacity and at all times mentioned herein, advises/consults and is a co-conspirator, conspiring with the Defendants, aiding and abetting the Defendants to defraud the Plaintiff out of his property rights through assisting the Defendants to engage in unlawful non-judicial trustee sale of the Plaintiff's property under the color of the law thereby denying the Plaintiff his due process and equal protection rights. Hanley is liable under the Doctrine of Respondent Superior, the Pinkerton Theory of Liability and under the liability theory that principles may not benefit from the inequitable conduct of their agents. Agent's inequitable acts may be imputed to the principle whether or not the principle knew of the agent's misconduct.

39.     Robert C. Rasmussin ("Ramussin") 4665 MacArthur Court, Suite 200, Newport Beach, CA 92660, partner of the law firm of Wright Finlay & Zak, LLP, individually and in his official capacity and at all times mentioned herein, advises/consults and is a co-conspirator,

conspiring with the Defendants, aiding and abetting the Defendants to defraud the Plaintiff out of his property rights through assisting the Defendants to engage in unlawful non-judicial trustee sale of the Plaintiff's property under the color of the law thereby denying the Plaintiff his due process and equal protection rights. Ramussin is liable under the Doctrine of Respondent Superior, the Pinkerton Theory of Liability and under the liability theory that principles may not benefit from the inequitable conduct of their agents. Agent's inequitable acts may be imputed to the principle whether or not the principle knew of the agent's misconduct.

40.     Edwin G. Rice ("Rice") 4665 MacArthur Court, Suite 200, Newport Beach, CA 92660, partner of the law firm of Wright Finlay & Zak, LLP, individually and in his official capacity and at all times mentioned herein, advises/consults and is a co-conspirator, conspiring with the Defendants, aiding and abetting the Defendants to defraud the Plaintiff out of his property rights through assisting the Defendants to engage in unlawful non-judicial trustee sale of the Plaintiff's property under the color of the law thereby denying the Plaintiff his due process and equal protection rights. Rice is liable under the Doctrine of Respondent Superior, the Pinkerton Theory of Liability and under the liability theory that principles may not benefit from the inequitable conduct of their agents. Agent's inequitable acts may be imputed to the principle whether or not the principle knew of the agent's misconduct.

41.     Alysa J. Ward ("Ward") 4665 MacArthur Court, Suite 200, Newport Beach, CA 92660, partner of the law firm of Wright Finlay & Zak, LLP, individually and in her official capacity and at all times mentioned herein, advises/consults and is a co-conspirator, conspiring with the Defendants, aiding and abetting the Defendants to defraud the Plaintiff out of his property rights through assisting the Defendants to engage in unlawful non-judicial trustee sale of the Plaintiff's property under the color of the law thereby denying the Plaintiff his due process

and equal protection rights. Ward is liable under the Doctrine of Respondent Superior, the Pinkerton Theory of Liability and under the liability theory that principles may not benefit from the inequitable conduct of their agents. Agent's inequitable acts may be imputed to the principle whether or not the principle knew of the agent's misconduct.

42.     Robin P. Wright ("Wright") partner of the law firm of Wright Finlay & Zak, LLP, individually and in her official capacity for engaging in a RICO enterprise and at all times mentioned herein, advises/consults and is a co-conspirator, conspiring with the Defendants, aiding and abetting the Defendants to defraud the Plaintiff out of his property rights. through assisting the Defendants to engage in unlawful non-judicial trustee sale of the Plaintiff's property under the color of the law thereby denying the Plaintiff his due process and equal protection rights. Wright is liable under the Doctrine of Respondent Superior, the Pinkerton Theory of Liability and under the liability theory that principles may not benefit from the inequitable conduct of their agents. Agent's inequitable acts may be imputed to the principle whether or not the principle knew of the agent's misconduct.

43.     T. Robert Finlay ("Finlay") partner of the law firm of Wright Finlay & Zak, LLP, individually and in his official capacity for engaging in a RICO enterprise and at all times mentioned herein, advises/consults and is a co-conspirator, conspiring with the Defendants, aiding and abetting the Defendants to defraud the Plaintiff out of his property rights through assisting the Defendants to engage in unlawful non-judicial trustee sale of the Plaintiff's property under the color of the law thereby denying the Plaintiff his due process and equal protection rights. Finlay is liable under the Doctrine of Respondent Superior, the Pinkerton Theory of Liability and under the liability theory that principles may not benefit from the inequitable

conduct of their agents. Agent's inequitable acts may be imputed to the principle whether or not the principle knew of the agent's misconduct.

44.     Jonathan M. Zak ("Zak") partner of the law firm of Wright Finlay & Zak, LLP, individually and in his official capacity for engaging in a RICO enterprise and at all times mentioned herein, advises/consults and is a co-conspirator, conspiring with the Defendants, aiding and abetting the Defendants to defraud the Plaintiff out of his property rights through assisting the Defendants to engage in unlawful non-judicial trustee sale of the Plaintiff's property under the color of the law thereby denying the Plaintiff his due process and equal protection rights. Zak is liable under the Doctrine of Respondent Superior, the Pinkerton Theory of Liability and under the liability theory that principles may not benefit from the inequitable conduct of their agents. Agent's inequitable acts may be imputed to the principle whether or not the principle knew of the agent's misconduct.

45.     Kim R. Lepora ("Lepora") partner of the law firm of Wright Finlay & Zak, LLP, individually and in her official capacity for engaging in a RICO enterprise and at all times mentioned herein, advises/consults and is a co-conspirator, conspiring with the Defendants, aiding and abetting the Defendants to defraud the Plaintiff out of his property rights through assisting the Defendants to engage in unlawful non-judicial trustee sale of the Plaintiff's property under the color of the law thereby denying the Plaintiff his due process and equal protection rights. Lepora is liable under the Doctrine of Respondent Superior, the Pinkerton Theory of Liability and under the liability theory that principles may not benefit from the inequitable conduct of their agents. Agent's inequitable acts may be imputed to the principle whether or not the principle knew of the agent's misconduct.

46.     Chirag Patel ("Patel") agent and/or employee of Ocwen Financial, individually and in his official capacity, upon information and belief, is at all times herein mentioned as a employee of Ocwen Financial Corporation and all of the officers, agents, servants and employees under his control.  Patel is liable under the Doctrine of Respondent Superior under the Pinkerton Theory of Liability and the inequitable conduct of the agent.  Agent's inequitable acts may be imputed to the principle whether or not the principle knew of the agent's misconduct.

47.     John Bombella ("Bombella") agent and/or employee of Ocwen Financial, individually and in his official capacity, upon information and belief, is at all times herein mentioned as a employee of Ocwen Financial Corporation and all of the officers, agents, servants and employees under his control.  Bombella is liable under the Doctrine of Respondent Superior under the Pinkerton Theory of Liability and the inequitable conduct of the agent.  Agent's inequitable acts may be imputed to the principle whether or not the principle knew of the agent's misconduct.

48.     Litton Loan Servicing, LP ("Litton") a servicer of residential mortgages and a Delaware Limited Partnership.  Ocwen acquired Litton in September of 2011.

49.     Homeward Residential Holdings, Inc. ("Homeward"), American Home Mortgage Service, Inc. ("American") servicers of residential mortgages and a Delaware Corporation acquired by Ocwen on December 27, 2012.

50.     This action[4] is also brought against DOES 1 through 10, which may include Defendants' lawyers, predecessors, partners, associates, agents, employees, affiliates and subsidiaries, which hereafter are also included in the term "Defendant."  Plaintiff is ignorant to

---

[4] Michael Stoller, 23, the current owner of the property (Assignor) assigns, grants, transfers and conveys unto Christopher Stoller and/or Leo Stoller under the Law of Assignment of causes of action any and all causes of action, remedies or claims and the right to prosecute such causes of action in the name of the Assignor.

the true names and a capacity of Defendants sued herein as DOES 1 through 10 and therefore sues these Defendants by such fictitious names. Plaintiff will add their names to the Complaint to allege their true names and capacities when ascertained.

51.  Plaintiff believes and thereon alleges that at all times herein mentioned, each of the remaining Defendants and was at all times acting within the purpose and scope of such relationship, or alternatively while purporting to act within the purpose and scope of such relationship, exceeded said authority, or alternatively, while purporting to act to further the purpose of said relationship, instead engaged in self-dealing and acted to harm said relationship or alternatively colluded and conspired with other Defendants or all of them in the harms alleged herein.

## JURISDICTION AND VENUE

52.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331, 1345, 1345 and 1367 and under 12 U.S.C. §5565 and over Defendants. The Complaint states claims upon which relief may be granted against the Defendants. Venue is appropriate in this District pursuant to 28 U.S.C. §1391(b)(2) and 12 U.S.C. §5564(f).

53.  The Defendants do business in all fifty states[5] and in this District. False statements were made in this District and acts giving rise to the violations complained of which occurred in this District in connection with the acts alleged in this Complaint, Defendants directly or indirectly used the means and instrumentalities of interstate commerce including but not limited to the U.S. mail, emails, cell phones, interstate telephone communications.

54.  Jurisdiction is proper in this Court under 28 U.S.C. §1332(d)(3). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000. This Court

---

[5] Ocwen has admitted in a Sec Form 10-K filing period ending December 31, 2013, that the mortgage properties securing the residential loans that they service are geographically located throughout all fifty states, the District of Columbia and two U.S. Territories.

may exercise supplemental jurisdiction over the state law claims because of all the claims are derived from a common nucleus of operative facts and are such that the Plaintiffs ordinarily would expect to try them in one judicial proceeding.

55.     Venue lies within this judicial district under 28 U.S.C. §1391(b)(1) and (c)(2) because the Defendants' contacts are sufficient to subject them to personal jurisdiction in this District and therefore, Defendants reside in this District for purposes of venue, or under 28 U.S.C. §1391(b)(2) because certain acts giving rise to the claims at issue in this Complaint occurred among other places in this District.

## EMERGENCY RELIEF SOUGHT FROM THIS COURT

56.     The Court is requested to enter a pre-sale injunction to prohibit the Defendants from selling the Plaintiffs' family home, located at 28437 N. 112th Way, Scottsdale, AZ, tax parcel number 216-74-044-9.

57.     On October 28, 2015, Defendants have scheduled an unlawful non-judicial trustee sale of Plaintiffs' family home without any notice to the Plaintiffs.

58.     The Arizona Supreme Court in *BT Capital* held that "*BT*" had failed to obtain a pre-sale injunction to prohibit the sale of its real estate, applying Arizona §33-811 CC, the Arizona Supreme Court held that *BT's* claim on the property had therefore become moot because BT did not pursue its one avenue for challenging the sale, filing for injunctive relief.  See *BT Capital, LLC v. TD Service Company of Arizona*, AZ Sup. Ct. cv-11-0308-pr.

59.     Plaintiffs requesting this Court grant a pre-sale injunction of their family home, will simply maintain the status quo in this case it will not prejudice the Defendants in any way and will allow the Plaintiffs the chance to not lose all their rights for their family home during the course of this litigation.

60.     If this Court allows the non-judicial trustee sale to proceed on October 28, 2015, it will render any relief that this Court might give the Plaintiffs according to Arizona law and the Plaintiffs will lose all their rights to their home during the pendency of this matter.

61.     This Court should grant the Plaintiffs' a pre-sale injunction for the following reasons: (1) there is a likelihood or irreparable harm with no adequate remedy at law. There are no money damages that can repay the Plaintiffs for the loss of their family home; (2) the balance of harm favors the movant; (3) there is a likelihood of success on the merits of the case; and (4) the public interest favors the granting of the pre-sale injunction to prevent unlawful non-judicial trustee sales of family homes and unlawfully foreclosing of family homes. There is no dispute that millions of Americans have been unlawfully foreclosed upon by the Defendants who engage in mortgage foreclosure fraud as a regular course of their business as the record in this case evidences. In addition, the Defendants have been very successful in defrauding thousands of Arizona home owners out of their properties through fraudulent notice of trustee sales because Arizona is a state which allows non-judicial foreclosures to take place without notice to the parties, without Court supervision, without any due process as secured by the Plaintiffs' Fifth Amendment Rights from the US Constitution.

## NATURE OF THE CASE

62.     This case involves a fraudulent mortgage foreclosure and the practices of Defendants in connection with Ocwen's racketeering.

63.     Although Ocwen has entered into a series of consent judgments i.e. *Consumer Protection Bureau and 49 State Attorney General v. Ocwen Financial Corporation and Ocwen Loan Servicing, LLC,* which provides:

> "Ocwen is in violation of paragraph A of the Consent Judgment,
> (aided and abetted by all of the Defendants) – Servicer shall ensure

that factual assertions made in pleadings (complaint, counterclaim, cross-claim, answer or similar pleadings), bankruptcy proofs of claim (including any facts provided by Servicer or based on information provided by the Servicer that are included in any attachment and submitted to establish the trust of such facts (POC), Declarations, affidavits, and sworn statements filed by or on behalf of Servicer in judicial foreclosures or bankruptcy proceedings and notices of default, notices of sale and similar notices submitted by or on behalf of Servicer in non-judicial foreclosures are accurate and complete and are supported by competent and reliable evidence. Before a loan is referred to non-judicial foreclosure, Servicer shall ensure that it has reviewed competent and reliable evidence to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information."

Ocwen was notified on the fraudulent trustee sale and has refused to take any remedial action to vacate the trustee sale schedule for October 28, 2015. Ocwen is trying to unlawfully foreclose on the Plaintiffs family home.

64. Christopher Stoller requested under the terms of the Consent Judgment for Ocwen to provide copies of any assignment of mortgages or deeds of trust to demonstrate their rights to foreclose on the borrower's note, which Promissory Note and the Deed of Trust. Ocwen violated the Consent Judgment and failed or refused to provide the documents listed under the Consent Judgment.

65. Christopher Stoller has filed Disciplinary Complaints against the Defendants' attorneys for their role in the fraudulent mortgage scheme of their client ("**Exhibit 3**").

66. Ocwen uses an enterprise of affiliate shell companies in order to defraud the Plaintiff. Namely Ocwen Financial Servicing, LLC, Western Progressive Arizona, Inc., Premium Title Services, Inc. Altisource Portfolio Solutions SA, which are aided and abetted by Defendants Bradley Arant Boult Cummings, LLP, Wright Finlay & Zak, LLP and Glenn Rasmussen

67.     The Defendants ongoing mortgage foreclosure scheme on the Plaintiff has not been prevented by the numerous Consent Judgments which total 2.2 Billion Consent Judgment of nationwide foreclosure fraud.

68.     Litigation has been brought upon Ocwen by the Consumer Finance Bureau. 49 Attorney Generals of the United States and the District of Columbia has done nothing to quell the countless fraudulent mortgage foreclosure actions including the case at bar. This criminal behavior has dated back to 2009, four years prior to the settlement.

## FACTUAL BACKGROUND

69.     Plaintiff Christopher Stoller, purchased property known as 28437 N. 112th Way, Scottsdale, AZ from Philip Stone who Quit Claimed his interest to Christopher Stoller Pension and Profit Sharing Plan Limited (CPPSP) on September 19, 2008 ("**Exhibit 4**"). This was recorded in the Maricopa County Recorder's. Office on September 22, 2008 under 2008-0815422.

70.     On September 19, 2008, Philip Stone transferred and conveyed to CSPPS, a Bahamas Corporation and/or Christopher Stoller and Leo Stoller (collectively Assignees) under the Law of Assignments of Causes of Action insofar as permitted by law, forever, any and all causes of action, remedies or claims now or in the future, that Assignor CSPPSP have against any party, not limited to financial institutions, contractors, builders and their employees, affiliates, successors and assigns, et al., as well as the right to prosecute such causes of action in the name of the Assignor or Assignees or any of them and the right to settle or otherwise resolve such causes of action as Assignees sees fit, regarding the following real property in Maricopa County, State of Arizona:

> Lot 3, Pinnacle Foothills, according to Book 398 of
> Maps, Page 50, and Affidavit of Correction

recorded in Document No: 96-0145582, records of Maricopa County, Arizona. Assessor's Parcel Number: 216-74-044.

Commonly known as: 28437 N. 112th Way, Scottsdale, Arizona 85262.

Notice(s) of Lis Pendens were filed by Christopher Stoller on the subject real estate on December 29, 2008 under No: 2008-1090943 with the Maricopa County Recorder's Office and another Lis Pendens filed on December 2, 2013 under No: 20131025435.

71.     Philip Stone does not owe any delinquency payments nor does Philip Stone owe any unpaid principle balances on said property. All of Philip Stone's debts were discharged in his Bankruptcy ("**Exhibit 5**"). This fact is well known to the Defendants, yet the Defendants still were attempting to collect on debts which violates the Federal Fair Debt Collection Act and the Bankruptcy Discharge Injunction set forth in 11 U.S.C. §524.

72.     Philip Stone's Promissory Note secured by a Deed of Trust and the Adjustable Rate Note together was cancelled as a result of the United States Bankruptcy Code 10-11558-17. Christopher Stoller filed a full Release and full Re-Conveyance of said Deed of Trust and all other debts in connection with same including the Adjustable Rate Note secured by the Deed of Trust was filed with the Maricopa County Recorder's Office on August 1, 2014, under no: 2014-0512240 ("**Exhibit 6**").

73.     On June 11, 2010, Bank of America filed in the US Bankruptcy Court in New Mexico under Bankruptcy Case No: 10-11558, a certified copy of the original Adjustable Rate Note ("**Exhibit 7**") dated May 2, 2006 for the subject property located at 28437 112th Way, Scottsdale, Arizona.

74.     Defendants including Shepro and Wilcox caused to be filed an unlawful Notice of Trustee Sale under oath and caused the fraudulent Notice to be recorded in the Maricopa Recorder's Office under no: 2014-0480249 and another fraudulent Notice was recorded under no: 2015-0522282.  On July 23, 2014, under document no: 2014048249 it was announced that the Plaintiff's property located at 28437 N. 112th Way, Scottsdale, AZ will be sold at public auction to the highest bidder and would take place at the Superior Court Building in Phoenix, Arizona on November 12, 2014.  Plaintiff Stoller served an objection to the Defendants via US Mail on August 7, 2014.

75.     On July 23, 2014, Defendants filed their Notice of Trustee Sale and Debt Validation Notice, Statement of Breach and Non-Performance ("**Exhibit 8**").  These are fraudulent documents and were fraudulently recorded with the Maricopa Recorder's Office.  The Defendants most current fraudulent Notice of Trustee Sale was recorded on October 28, 2015.

76.     As well known to the Defendants, their successor Trustee WPAI does not qualify as a Trustee of the Deed of Trust in a Trustee's capacity as an escrow agent as required by A.R.S. §33-803(A)(6).  According to the Arizona Department of Financial Institutions WPAI is not a registered Trustee and has no license.

77.     As well known to the Defendants, the Statements of Breach or Non-Performance falsely claiming that Philip Stone is in "foreclosure because he is delinquent in payments" are false and misleading due to the fact that all of Mr. Stone's debts were discharged on July 19, 2010,  in his Bankruptcy under case no: 10-11558-17 out of the District of New Mexico.

78.     As well known to the Defendants, the Beneficiary or Substitution of Trustee lacks the authority under the Release and Full Conveyance of the Trustee Deed "(**Exhibit 6**") and the cancellation of all debts including the Adjustable Rate Note secured by the Deed of Trust and the

Title of the subject property being in the name of CSPPSP and/or Michael Stoller cannot be sold under the conveyance of the Deed of Trust.

79.    As well known by the Defendants pursuant to the Substitution of Trustee dated June 9, 2014, at the Maricopa Recorder's Office under document no: 2014-0433956, contact Mel-Ling Mitchell the Management Coordinator was not an Officer of Ocwen Loan Servicing, LLC, and is an unauthorized robosigner; more evidence of the fraud of the Defendants.

80.    As well known to the Defendants, the previous Trustee BAC Home Loans Servicing, (BAC) the successor to Countrywide Bank NA, was not registered with the Arizona Corporation Division and was not registered as a Limited Liability Partnership as of April 9, 2009.  BAC was not registered with the Arizona Department of Financial Institutions and had no authority to convey any Assignment to Reconstruct Company, NA or Ocwen Loan Servicing, LLC.

81.    As well known to the Defendants, a representative of Ocwen Loan Servicing, LLC, who claimed to be agent, Chirag Patel, on March 26, 2014, informed Christopher Stoller that he was required to have insurance for his property pursuant to a residential mortgage and since Christopher Stoller refused to provide a copy of said insurance, Ocwen was placing insurance on the subject property and would be charging Mr. Stoller $3,000 annually for a home owners insurance policy.

82.    Ocwen Loan Servicing had no authority to place a home owner's insurance policy on the subject property on March 26, 2004.  This was done mainly for the sole purpose so that Ocwen could receive kickbacks in the form of commissions from the insurance company from whom the policies were obtained.  This causes the rates and amount of coverage to be excessive in is a clear violation of the law.

83.     Defendant Patel confirmed in a telephone conversation on Thursday, August 21, 2014, that the Notice of Trustee dated July 23, 2014, was fraudulent. Patel stated that "Ocwen was aware of the Deed of Re-Conveyance and that they received by Certified Mail that Ocwen had no lawful interest in the subject property". He also stated that "Ocwen Loan Servicing and/or its agent Western Progressive will immediately forward a Notice to the subject property was permanently cancelled" ("**Exhibit 9**"). Notwithstanding this conversation, the Defendants knowingly and willfully continued to unlawfully foreclose on Plaintiff's property on October 28, 2015.

84.     On October 16, 2014, Christopher Stoller received an email (Doc 1527076; D.C. Court of Appeals; Case No: 14-5265) from Nilekha Ghage an Ombudsman/Ocwen who stated that Ocwen was in possession of the original Adjustable Rate Note since September 8, 2012. Ms. Ghate stated that the signature of Page 505 of the Adjustable Rate Note was the original signature of Laurie Meder (Doc 1527076). Ms. Ghate also confirmed that Erbey and Faris had acknowledged receipt of Christopher Stoller's email which is incorporated herein by reference. As well known to the Defendants, the signature of Laurie Meder was a forgery[6].

85.     In the deposition of employee Ms. DeMartini ("**Exhibit 10**") of BOA and formerly of Countrywide Bank, on Page 3, Lines 12-16, Ms. DeMartini states "I've never seen an actual note that has an endorsement on the bottom." Ms. DeMartini also testified on Page 16, Line 11-12 that "allonge" were prepared when "counsel called up and said we need allonge."

---

[6]     The forged Adjustable Rate Note does not present with a stamp on its front page indicating that it is the genuine Adjustable Rate Note. On the top of the original Note from Philip Stone's Bankruptcy is the original Note; the Adjustable Rate Note provided by the Defendants is a forgery. Christopher Stoller is a recognized document expert certified by the Americans for the Enforcement of Attorney Ethics. Stoller's review of the document allegedly signed by Laurie Meder is a 100% forgery. Evidence is provided herein of the forged signature ("**Exhibit 11**").

86.     Plaintiff was informed via telephone by Jeannine Pelton, an Ocwen Consumer Account Analyst that the Adjustable Rate Note had a fraudulent Countrywide endorsement imprinted on the Note. When Plaintiff asked the reason of the fraudulent endorsement he was told that the endorsement was recently affixed to the Adjustable Rate Note on the direct order of Defendant Robert Maddox in order to establish Standing for the foreclosure and was also advised that the Note was a photocopy and not the original and was just prepared in order to foreclose on the Plaintiff's property which is the subject of this law suit.

87.     This fraudulent behavior has been the practice of the Defendants into defrauding the Plaintiff and thousands of others out of their family homes. The Defendants have engaged in criminal behavior and engaged in subornation of perjury by causing false and fraudulent documents to be filed with the Maricopia Recorder's Office. Ocwen to date has paid out billions of dollars in settlement judgments to victims of their fraudulent and criminal behavior.

88.     The Consumer Financial Protection Bureau and forty-nine (49) State Attorney Generals have sued Ocwen Financial in a civil action, case no: 13-2025 in the District Court for the District of Columbia. Plaintiff incorporates this Complaint herein by reference, paragraph by paragraph, reasserts, repleads and realleges and fully integrates in support of this Complaint. Ocwen entered into a settlement Consent Judgment (Doc 12; case no: 13-2025) incorporated herein by reference as if fully copied and attached and fully integrated into this Complaint.

89.     Defendant Smith was Court-appointed to oversee Ocwen's compliance with the national mortgage settlement. Plaintiff asserts that Smith breached his role and failed to effectively monitor the Consent Judgment and failed to prevent Ocwen from continuing to engage in the criminal and fraudulent foreclosure activities that were supposed to have ended.

Smith aided and abetted Ocwen to continue to defraud home owners out of their property rights and acted as if there were no Consent Judgment in place.

90.     Since the Consent Judgment was entered there has been over One Thousand lawsuits filed against Ocwen for engaging in mortgage fraud, security fraud, violating bankruptcy injunctions and collecting debts that have already been discharged as in the case at bar.   Plaintiff incorporates by reference the following lawsuits filed against paragraph by paragraph in support of his Complaint: *Norbert Tuseo v. Ocwen Financial Corp, et al.,* District Court Southern District of Florida, West Palm Division, case no: 14-cv-81064; *Department of Financial Services In the Matter of Ocwen Loan Servicing, LLC; Walden v. Ocwen Loan Servicing, LLC,* U.S.D.C. Northern District of Florida, case no: 13-cv-361; *Commissioner of Business over sight v. Ocwen Loan Servicing, LLC,* case no: 2014-100930; *David Weiner v. Ocwen Financial Corporation et al,* U.S.D.C., Eastern Division of California, case no 14-cv-2597; *Julie Seiortino et al v. Ocwen Loan Servicing, LLC,* U.S.D.C. Northern District of Georgia, Atlanta Division, case no: 13-cv-00732; and *Myrtle Carr et al v. Ocwen Loan Servicing, LLC,* case no: 13-cv-732-JCF.

91.     The Examination Findings of the Consent Judgment that was entered against Ocwen specifically state:

> Examination findings means Report of Examination and related inquires and investigations by the State Mortgage Regulators that identified practices that may otherwise violate the laws and regulations of the participating states and related Federal Law including but not limited to the allegations and Releases that are the basis of the Consent Judgment and specifically include:
>
> a. Lack of controls related to document execution, including evidence of robo-signing, unauthorized execution, assignment backdating, improper certification and notarization, chain of title irregularities

and other related practices affecting the integrity of documents relied upon in the foreclosure process;

b. Deficiencies in loss mitigation and loan modification processes, including but not limited to:

1. Failure to effectively communicate with borrowers regarding loss mitigation and other foreclosure avoidance alternatives;
2. Failure to account for documents submitted in tandem with application for loss mitigation assistance;
3. Lack of reasonable expedience in approving or denying loss mitigation applications;
4. Providing false or misleading reasons for denial of loan modifications; and
5. Failure to honor the terms loan modifications for transferred accounts and continued efforts to collect payments under the original note terms.

c. Lack of controls related to general borrowers account management, including but not limited to:

1. Misapplication of borrower payments;
2. Inaccurate escrow accounting and statements; and
3. Assessment of unauthorized fees and charges.

d. Inadequate staffing and lack of internal controls related to customer service;
e. Deficiencies in control and oversight of third-party providers, including but not limited to, local foreclosure counsel;
f. Deficiencies in document maintenance processes, including but not limited to, failure to produce documents requested in tandem with examinations; and
g. Deficiencies in management control and supervision necessary to ensure compliance with applicable law and regulations.

### COUNT I

### Violation of Fair Debt Collection Practice Act

92.    Plaintiffs repeat and reallege each and every allegation contained in the above

paragraphs.  This action is arises out of Defendants' illegal efforts to collect a consumer debt

from Philip Stone that has been discharged in Bankruptcy.

93.     This action is also brought to hold the Defendants in civil contempt for the knowing and willful violation of the Bankruptcy Discharge Injunction set forth in 11 U.S.C. § 524 which operates as an injunction against the commencement or continuation of an action, the employment of process, or an act to collect, recover or offset any such debt as a personal liability of the debtor, whether or not such discharge is waived[7].

94.     Defendants have previously sent out over 265,000 unlawful debt collection letters See official transcript at Page 7, Lines 22-25 ("**Exhibit 12**"). Defendants are engaged in a criminal enterprise to defraud home owners like the Plaintiff out of their family homes.

95.     Court Order, Consent Decrees, Consent Judgments cease the Defendants from engaging in their criminal enterprise. Defendants are violating the property rights of the Plaintiffs and thousands of innocent victims.

96.     Plaintiff has been damaged by the unlawful conduct of the Defendants.

**WHEREFORE**, Plaintiff seeks and award of damages which will be significant in order to deter the Defendants from continuing to engage in their unlawful and criminal conduct. Plaintiff seeks a damage award in excess of One Hundred Million Dollars and punitive damages in the amount of Five Hundred Million Dollars and for attorney fees and costs. Plaintiff requests that this Court immediately enter and Order for pre-sale and/or permanent injunction stating that the Defendants have no ownership and/or property rights to the property known as 28437 N. 12th Way, Scottsdale, Arizona 85262.

## COUNT II

### Violation of Discharge Injunction

---

[7] Defendants are serial violators of Bankruptcy Discharge injunctions. See Order finding Ocwen Loan Servicing, in contempt of the discharge injunction ("**Exhibit 13**").

97.     Plaintiffs repeat and reallege each and every allegation contained in the above paragraphs.

98.     Defendant have violated the Discharge Injunction 11 U.S.C. §524 which states "operates as an injunction against the commencement or continuation of an action, the employment of process or an act to collect, recover or offset any such debts as a personal liability of the debtor, whether or not such discharge was waived."

99.     Notwithstanding the fact that Philip Stone filed bankruptcy and was discharged from all of his debts on July 19, 2010 ("**Exhibit 5**"). The Defendants had constructive notice of this fact and clearly violated the bankruptcy injunction and continued to collect the debt.

100.    Plaintiff has been damaged by the unlawful conduct of the Defendants.

**WHEREFORE**, Plaintiff seeks and award of damages which will be significant in order to deter the Defendants from continuing to engage in their unlawful and criminal conduct. Plaintiff seeks a damage award in excess of One Hundred Million Dollars and punitive damages in the amount of Five Hundred Million Dollars and for attorney fees and costs. Plaintiff requests that this Court immediately enter and Order for pre-sale and/or permanent injunction stating that the Defendants have no ownership and/or property rights to the property known as 28437 N. 12th Way, Scottsdale, Arizona 85262.

## COUNT III
### Failure to Comply with Applicable Law

101.    Plaintiffs repeat and reallege each and every allegation contained in the above paragraphs.

102.    Federal, Illinois, Arizona and D.C. law require parties to be notified prior to their homes being foreclosed upon or sold at a Trustee Sale.

103.    Defendants knowingly, willfully and with malice failed to follow the law and properly serve notice on the Plaintiff of the foreclosure Trustee Sale which is scheduled to take place on October 28, 2015.

104.    Defendants knowingly concealed the foreclosure date from the Plaintiff with whom they had a legal obligation to inform as a matter of law.

105.    The Trustee Sale scheduled for October 28, 2015, is void ab initio.

106.    In addition to the violations of state and federal statutes alleged above, the conduct of the Defendants as set forth above constitutes unfair or deceptive acts of practice, fraud, conspiracy, civil racketeering, unjust enrichment and violations of the Plaintiff's due process and equal protection rights under the First, Fourth, Fifth and Fourteen Amendment of the U.S. Constitution.

107.    Defendants' actions as set forth above occurred in the conduct of trade or commerce. Defendants' actions are part of a scheme to defraud the Plaintiff by using the U.S. Mail, email, faxes, and telephone communications which predicate acts of RICO.

108.    On or about September 19, 2008, by written agreement, borrower on the 28437 property, Philip Stone, assigned to Christopher Stoller (CSPPSP) any and all claims arising or related to said property and on July 16, 2009, CSPPSP assigned Plaintiff Christopher Stoller any and all claims arising or related to said property. This fact was well known to the Defendants.

109.    Defendants are liable to the Plaintiff for damages in sums to be shown according to proof, in addition to attorney fees and costs. Additionally, Plaintiff is entitled to a pre-sale and/or permanent injunction barring the Defendants from selling the Plaintiffs property.

110.    Defendants have a history of defrauding property owners including the Plaintiff out of their property rights for many years. This fraudulent practice has to be stopped and

Defendants have proven that Court Orders, Consent Judgments, Consent Decrees ("**Exhibit 14**"), cannot deter the Defendants from stopping their criminal acts.

**WHEREFORE**, Plaintiff seeks and award of damages which will be significant in order to deter the Defendants from continuing to engage in their unlawful and criminal conduct. Plaintiff seeks a damage award in excess of One Hundred Million Dollars and punitive damages in the amount of Five Hundred Million Dollars and for attorney fees and costs. Plaintiff requests that this Court immediately enter and Order for pre-sale and/or permanent injunction stating that the Defendants have no ownership and/or property rights to the property known as 28437 N. 12th Way, Scottsdale, Arizona 85262.

## COUNT VI
### Document Fraud

111.    Plaintiffs repeat and reallege each and every allegation contained in the above paragraphs.

112.    Defendants each are charged with forgery, counterfeiting, altering and/or falsifying documents, falsely making a fraudulent Adjustable Rate Note in order to provide the Defendants, under the color of law, the right to foreclose on the Plaintiff's property.

113.    Defendants conspired together to forge, counterfeit, alter and/or falsify documents and falsely making a fraudulent Notice of Trustee Sale and cause it to be filed with the Maricopa County Recorder's Office.

**WHEREFORE**, Plaintiff seeks and award of damages which will be significant in order to deter the Defendants from continuing to engage in their unlawful and criminal conduct. Plaintiff seeks a damage award in excess of One Hundred Million Dollars and punitive damages in the amount of Five Hundred Million Dollars and for attorney fees and costs. Plaintiff requests that this Court immediately enter and Order for pre-sale and/or permanent injunction stating that

the Defendants have no ownership and/or property rights to the property known as 28437 N. 12th Way, Scottsdale, Arizona 85262.

## COUNT V
### Counterfeiting and Forgery

114.     Plaintiffs repeat and reallege each and every allegation contained in the above paragraphs.

115.     Defendants caused a counterfeit Notice of Trustee Sale to be filed in the Maricopa County Recorder's Office under the color of law in order to give the Defendants Standing to unlawfully foreclose on the Plaintiff's property.

116.     Defendants caused the said counterfeit documents to contain a forged signature of Laurie Meder on the Adjustable Rate Note which was then filed with the Recorder's Office.

**WHEREFORE**, Plaintiff seeks and award of damages which will be significant in order to deter the Defendants from continuing to engage in their unlawful and criminal conduct. Plaintiff seeks a damage award in excess of One Hundred Million Dollars and punitive damages in the amount of Five Hundred Million Dollars and for attorney fees and costs. Plaintiff requests that this Court immediately enter and Order for pre-sale and/or permanent injunction stating that the Defendants have no ownership and/or property rights to the property known as 28437 N. 12th Way, Scottsdale, Arizona 85262.

## COUNT VI
### Civil Rights

117.     Plaintiffs repeat and reallege each and every allegation contained in the above paragraphs.

118.     Defendants have deprived the Plaintiff of his federal due process rights through their abuse of process by attempting to foreclose with a fraudulent Notice of Trustee Sale using a

forged Adjustable Rate Note and without lawfully notifying the Plaintiff of the Trustee Sale and attempting to conduct a fraudulent Trustee Sale of the Plaintiff's property.

**WHEREFORE**, Plaintiff seeks and award of damages which will be significant in order to deter the Defendants from continuing to engage in their unlawful and criminal conduct. Plaintiff seeks a damage award in excess of One Hundred Million Dollars and punitive damages in the amount of Five Hundred Million Dollars and for attorney fees and costs. Plaintiff requests that this Court immediately enter and Order for pre-sale and/or permanent injunction stating that the Defendants have no ownership and/or property rights to the property known as 28437 N. 12th Way, Scottsdale, Arizona 85262.

## COUNT VII

## Tortious Inducement of Breach of Fiduciary Duties[8]

119.    Plaintiffs repeat and reallege each and every allegation contained in the above paragraphs.

120.    Defendant Smith was appointed to monitor and to enforce the Consent Judgment that was entered against Ocwen in case no: 13-cv-2025.

121.    Defendants have colluded with Defendant Smith in committing the breach of his duties.

122.    Defendant Smith has breached and failed in his responsibilities to determine whether servicer was in compliance with the servicing standards and whether servicer has satisfied the Consumer Relief requirements in accordance with the authorities provided when Smith knew or should have known that Ocwen was not in compliance.

---

[8] Under Illinois law Tortious inducement of breach of fiduciary duties requires the Plaintiff to prove that (1) the Defendant colluded with a fiduciary in committing a breach; (2) the Defendant knowingly colluded in or induced the breach; (3) the Defendant knowingly accepted the benefits from that breach. *Borsellino v. Goldman Sachs Group, Inc*, 477 F. 3d 502, 508-09 (7th Cir. 2007).

123. Defendant Smith's work plan was a sham. Smith conspired with Ocwen for the sole purpose of not enforcing the terms and conditions of the settlement agreement.

124. There is an actual connection between the Defendants Smith and the Office of Mortgage Oversight's conduct and their lack of effective monitoring which in turn caused the Plaintiff to bring a cause of action against Ocwen.

125. The Defendants are directly responsible for the proximate cause for the harm that Ocwen continues to inflict on property owners due to their failure of enforcing the Consent Judgment.

126. Defendants Smith and Office of Mortgage Oversight used their appointment as monitor to benefit themselves with the fees that were received for this assignment.

127. Defendants knowingly induced the breach and Defendant Smith has accepted benefits from that breach.

**WHEREFORE**, Plaintiff seeks and award of damages which will be significant in order to deter the Defendants from continuing to engage in their unlawful and criminal conduct. Plaintiff seeks a damage award in excess of One Hundred Million Dollars and punitive damages in the amount of Five Hundred Million Dollars and for attorney fees and costs. Plaintiff requests that this Court immediately enter and Order for pre-sale and/or permanent injunction stating that the Defendants have no ownership and/or property rights to the property known as 28437 N. 12th Way, Scottsdale, Arizona 85262.

## COUNT VIII

## Civil Conspiracy[9]

---

[9] Elements of civil conspiracy is a combination of two or more persons for the purpose of accomplishing either an unlawful purpose of a lawful purpose by unlawful means in a concerted action and in furtherance of which one of the conspirators committed an overt tortious or unlawful act. *Fritz v. Johnston*, 209 Ill. 2d 302, 807, N.E.2d 461, 470, 282 Ill. Dec. 837 (Ill. 2004).

128.     Plaintiffs repeat and reallege each and every allegation contained in the above paragraphs.

129.     Defendants conspired with each other to accomplish by concerted action the unlawful act of filing a fraudulent and forged Notice of Trustee Sale(s) in order to defraud the Plaintiff out of his property rights in the subject property.

**WHEREFORE**, Plaintiff seeks and award of damages which will be significant in order to deter the Defendants from continuing to engage in their unlawful and criminal conduct. Plaintiff seeks a damage award in excess of One Hundred Million Dollars and punitive damages in the amount of Five Hundred Million Dollars and for attorney fees and costs. Plaintiff requests that this Court immediately enter and Order for pre-sale and/or permanent injunction stating that the Defendants have no ownership and/or property rights to the property known as 28437 N. 12th Way, Scottsdale, Arizona 85262.

## COUNT XI
### Willful and Wanton Negligence[10]

130.     Plaintiffs repeat and reallege each and every allegation contained in the above paragraphs.

131.     Defendant Smith was appointed by the Court as Monitor of the Consent Judgment in the case of Consumer Protection Bureau et al v. Ocwen Financial Corporation.

132.     In the Consent Judgment Ocwen agreed not to continue its fraudulent mortgage foreclosure practices.

---

[10] In tort law, negligence is a distinct cause of action. Negligence generally consists of five elements (1) a duty of care owed by the Defendant to the Plaintiff; (2) a breach of that duty; (3) an actual cause connection between the Defendant's conduct and the resulting harm; (4) proximate cause which related to whether the harm was foreseeable; and (5) damages resulting from the Defendant's conduct. Plaintiff has all of the five elements in the case at bar.

133.    Defendant Smith was appointed to make sure Ocwen complied with the Consent Judgment and he failed in his duties.

134.    Defendant Smith owed a duty of care to the property owners with whom Ocwen violated their property rights.

135.    Plaintiff contacted Smith and Defendant Office of Mortgage Oversight ("**Exhibit 158**").

136.    Plaintiff received a response from Defendant Office of Mortgage Oversight and Defendant Smith ("**Exhibit 16**").

137.    Defendants Smith and Office of Mortgage Oversight were negligent when they refused to take remedial action to induce Ocwen to cease from engaging in their unlawful mortgage foreclosure practices.

**WHEREFORE**, Plaintiff seeks and award of damages which will be significant in order to deter the Defendants from continuing to engage in their unlawful and criminal conduct. Plaintiff seeks a damage award in excess of One Hundred Million Dollars and punitive damages in the amount of Five Hundred Million Dollars and for attorney fees and costs.  Plaintiff requests that this Court immediately enter and Order for pre-sale and/or permanent injunction stating that the Defendants have no ownership and/or property rights to the property known as 28437 N. 12th Way, Scottsdale, Arizona 85262.

## COUNT X
### Consumer Fraud

138.    Plaintiffs repeat and reallege each and every allegation contained in the above paragraphs.

139.    Defendants fraudulent Notice of Trustee Sale occurred in the course of conduct involving trade or commerce.

140.    Plaintiff's asserts that the Defendants engaged in deceptive or unfair practices by manufacturing a fraudulent Adjustable Rate Note and by filling a fraudulent Notice of Trustee Sale in the Maricopa County Recorder's Office.

141.    The Plaintiff was damaged by the Defendants continuous fraudulent behaviors.

**WHEREFORE**, Plaintiff seeks and award of damages which will be significant in order to deter the Defendants from continuing to engage in their unlawful and criminal conduct. Plaintiff seeks a damage award in excess of One Hundred Million Dollars and punitive damages in the amount of Five Hundred Million Dollars and for attorney fees and costs. Plaintiff requests that this Court immediately enter and Order for pre-sale and/or permanent injunction stating that the Defendants have no ownership and/or property rights to the property known as 28437 N. 12th Way, Scottsdale, Arizona 85262.

## COUNT XI
### Deceptive Trade Practices

142.    Plaintiffs repeat and reallege each and every allegation contained in the above paragraphs.

143.    This count is a deceptive business practice action against each of the Defendants individually and in their official capacity.

**WHEREFORE**, Plaintiff seeks and award of damages which will be significant in order to deter the Defendants from continuing to engage in their unlawful and criminal conduct. Plaintiff seeks a damage award in excess of One Hundred Million Dollars and punitive damages in the amount of Five Hundred Million Dollars and for attorney fees and costs. Plaintiff requests that this Court immediately enter and Order for pre-sale and/or permanent injunction stating that the Defendants have no ownership and/or property rights to the property known as 28437 N. 12th Way, Scottsdale, Arizona 85262.

## COUNT XII
### Aiding, Abetting and Conspiracy[11]

144.   Plaintiffs repeat and reallege each and every allegation contained in the above paragraphs.

145.   Ocwen Financial Corporation, Ocwen Loan Servicing, LLC, Western Progressive, William Shepro, Kevin Wilcox, Joseph Smith, Bradley Arant Boult Cummings, LLP, John T. Grenie, Wright Finlay & Zac, LLP, et al., owed a duty to the Plaintiff and they failed on all accounts.  They also had a duty not to defraud the Plaintiff and yet again failed.

146.   The Defendants were aware of the duty that all of the Defendants owed the Plaintiff and yet they all conspired to defraud the Plaintiff.

147.   Defendant law firms in this case have directly assisted their client, Ocwen in defrauding home owners out of their property rights including the Plaintiff.

**WHEREFORE**, Plaintiff seeks and award of damages which will be significant in order to deter the Defendants from continuing to engage in their unlawful and criminal conduct. Plaintiff seeks a damage award in excess of One Hundred Million Dollars and punitive damages in the amount of Five Hundred Million Dollars and for attorney fees and costs.  Plaintiff requests that this Court immediately enter and Order for pre-sale and/or permanent injunction stating that the Defendants have no ownership and/or property rights to the property known as 28437 N. 12th Way, Scottsdale, Arizona 85262.

---

[11] Aiding and abetting and conspiracy claims find their roots in criminal law.  In the civil context, they lead to liability for those who help other actors or a main actor (usually for lawyers it is the client) to commit some tort against a third party.  In practice, this often involves a claim that the lawyer helped their client either commit a fraud on a third party or breached some duty (usually fiduciary) to a third party. When brought against lawyers, these in-concert liability claims in most jurisdictions, involve the following elements (1) a duty owed by the client to a third party; (2) the lawyer is aware of the duty owed by the client to the third party; (3) that the client breaches that duty and/or commits a tort against that third party; (4) that the lawyer is aware of the breach and/or tort committed by the client; (5) that the lawyer assists the client in committing the tort and/or breach of; and (6) that the third party suffers some damage.  *Thornwood v. Jenner & Block*, 344 N.E.2d 15 Ill. App. (2003)

## COUNT XIII

### Negligent Hiring and Supervision

148.    Plaintiffs repeat and reallege each and every allegation contained in the above paragraphs.

149.    Defendants have admitted and the state mortgage regulators have identified practices of the Defendant which established the essential elements in this claim of negligent hiring and supervision which are memorialized in the Consent Judgment.

150.    Ocwen lacks control over its employees and supervision related to document execution including but not limited to the fact that they knew or should have known that their employees engaged in unlawful Robosigning, unauthorized execution of documents, assignment backdating, improper certification of documents and notary fraud, creating real estate chain of title, and Ocwen's employees engaged in other unlawful practices affecting the integrity of documents relied upon in the foreclosure process.   A fraudulent Notice of Trustee Sale was created and fraudulently recorded unlawfully.

151.    Lake of supervision which creates employees are allowed and encouraged to create deficiencies in loss mitigation, loan modification process, including but not limited to:

   a.  Employees who fail to effectively communicate with borrowers regarding loss mitigation and other foreclosure avoidance alternatives;
   b.  Employees failure to account for documents submitted in tandem with application for loss mitigation assistance;
   c.  Lack of supervision and in fact no supervision in eth expedience in approving or denying loss mitigation applications;
   d.  Supervision which encourages employees to provide false or misleading reasons for denial of loan modification; and
   e.  Supervision of employees who fail to honor the terms of loan modifications for transferring accounts and continued efforts to collect payments under the original Note terms.

152. Ocwen has admitted to and the state mortgage regulators have identified the practices which establish the central elements of a claim for negligent hiring and supervision in the Consent Judgment.

153. Ocwen admits that there is a lack of control related to general borrower account management including but not limited to:

  a. Misapplication of borrower payments in accurate escrow accounting and statements;
  b. Assessment of unauthorized fees and charges;
  c. Inadequate staffing of internal controls related to customer service;
  d. Deficiencies in control and oversight of third party providers, including but not limited to Defendants' counsel;
  e. Deficiencies in document maintenance process, including but not limited to failure to produce documents requested in tandem with examinations; and
  f. Deficiencies in management control and supervision necessary to ensure compliance with applicable laws and regulators.

154. All of the Defendants charged herein are well aware of these deficiencies that combined amount to nothing less than a criminal enterprise as defined in 18 U.S.C. §1962(d) and all of the Defendants aided and abetted Ocwen to conduct their RICO enterprise in violation of 18 U.S.C. §1961(4).

**WHEREFORE**, Plaintiff seeks and award of damages which will be significant in order to deter the Defendants from continuing to engage in their unlawful and criminal conduct. Plaintiff seeks a damage award in excess of One Hundred Million Dollars and punitive damages in the amount of Five Hundred Million Dollars and for attorney fees and costs. Plaintiff requests that this Court immediately enter and Order for pre-sale and/or permanent injunction stating that the Defendants have no ownership and/or property rights to the property known as 28437 N. 12th Way, Scottsdale, Arizona 85262.

## COUNT XIV

## Violation of the Racketeering influenced and Corrupt Organizations

155.   Plaintiffs repeat and reallege each and every allegation contained in the above paragraphs.

## The Enterprise

156.   Defendants at all relevant times are in violation of Title 18 U.S.C. §1962(c).  All employees including their directors, employees, agents and vendors conducted the affairs associated-in-fact enterprise, as the term is defined in  Title 18 U.S.C. §1961(4).  The "Ocwen Enterprise" and the affairs of the Ocwen Enterprise affect the interstate commerce through a pattern of racketeering activity.

157.   The Owen Enterprise is an ongoing continuing group or unit of persons and entities, law firms which are associated together for the common purpose of limiting costs and maximizing profits by fraudulently foreclosing on property owners throughout the United States;.

158.   While the members of the Ocwen Enterprise participate in and are part of the enterprise they also have an existence separate and distinct from the enterprise.  The Ocwen Enterprise has a systematic linkage because there are contractual relationships, agreements, retainer agreements, financial ties, and coordination of activities between the Defendants.

159.   The Ocwen Enterprise according to policies and procedures developed and established by its executives, Ocwen control and directs the affairs of the Enterprise and uses other members as instrumentalities to carry out its fraudulent schemes.

160.   Policies and procedures which were created by Ocwen executives and admitted to in the Consent Judgment clearly establish the unlawful behavior of the Ocwen Enterprise.

## Predicate Acts

49

161.    Ocwen Enterprise's systematic scheme to defraud home owners out of their property and to unlawfully send over 265,000 fraudulent collection letters[12] was facilitated by the use of the United States postal system.  Ocwen scheme constitutes racketeering activity and acts of mail and wire fraud under Title 18 U.S.C. §1341 and 1343.

162.    In violation of Title 18 U.S.C. §1341 and 1343 the Ocwen Enterprise utilized the mail and wire in furtherance of their scheme to defraud home owners out of their property rights. Ocwen sent out false collection letters, fraudulent mortgage foreclosure Trustee Sale documents, failed to provide proper Notices to the home owners and foreclosed on properties which deprive home owners of their due process rights.  Ocwen has also placed insurance on the home owner's property without permission of the property owners.

163.    Ocwen has used the internet, telephone and facsimile transmissions to fraudulently communicate false information regarding the property owners' loans, fees to borrowers to pursue and achieve their fraudulent scheme.  The Ocwen Enterprise engaged in repeated acts of wire fraud in violation of Title 18 U.S.C. §1343.

164.    The Ocwen Enterprise's knowledge that its activities are fraudulent and unlawful is evidenced by Ocwen's own employees i.e. Chirag Patel's admission and John Bombella, who admitted to the Plaintiff that the Assignment was fraudulent and that Kasandra Wittmayer committed notary ("**Exhibit 17**") fraud because John Bombella never appeared before her as she attested to on April 14, 2015.

165.    The predicate acts specified above constitute a pattern of racketeering within the meaning of Title 18 U.S.C. §1961(5) in which the Ocwen Enterprise has engaged in for years.

166.    All of the predicate acts of the racketeering activity described herein are part of the nexus of the affairs and functions of the Ocwen Enterprise's racketeering enterprise.

---

[12] 265,000 counts of mail fraud.

167.     The racketeering acts committed by the Ocwen Enterprise employed a similar method and were related with a similar purpose and involved similar participation with a similar impact on the Plaintiff.

### Ocwen Enterprise Scheme

168.     Defendants have been able to capitalize on the inherent flaws in the non-judicial foreclosure process scheming millions of dollars from innocent home owners.

169.     Non-judicial foreclosures are private debt collection procedures conducted without participation by the Court[13] and without any due process requirements.[14]

170.     The Ocwen Enterprise scheme is simple.  Ocwen acts like a debt collector but instead of acquiring for example consumer debt from credit cards and then going after the parties who owe the credit card debt, Ocwen acquires the right to service the mortgage debt.  Ocwen then acquires the rights to the bad mortgages for less than the value of the mortgage.  Ocwen then forecloses on the distressed property owners without notice; they sell their homes for near the market value and pocket millions of millions of dollars.  They have on retainer a series of law firms to carry out their scheme.

171.     Mortgages today are not held by a mortgagor's bank or savings and loan and serviced by them for the term of the loan.  Today, mortgages are sold, securitized, registered with the SEC and sold to investors.

172.     The Defendants are nothing more than 21 century debt collector bandits who purchase the rights to hundreds of thousands of securitize mortgages for .05% of their value and have learned very well how to unlawfully exploit millions of innocent people and there has been

---

[13] *Papas v. E. Sav. Bank, FSB*, 911 A2d 1230, 1237 (D.C. 2006) Foreclosure pursuant to power of sale clause in a Deed of Trust did not constitute government action to warrant due process requirements.
[14] Judicial foreclosure to enforce a lien on real property is historically an equitable action which involves an adjudication of the parties' rights and obligations before any property is sold. *Johnson v. Fairfax v. 11 Condo Owners Ass'n*, 641, A.2d 495, 506 (D.C. 1994).

Class Action lawsuits filed against the Defendants because of their unlawful business practices ("**Exhibit 18**").

173.    The non-judicial foreclosure process works by conducting fraudulent Deed of Trust sales unmonitored by the Court and without having any valid rights to collect the alleged debts as in the case at bar.  Defendants have generated billions of dollars through this practice.

174.    Even though there is a Consent Judgment against Ocwen, they still to this day operate their unlawful and criminal way of business.  Their business is funded by the billions of dollars that they scheme from the innocent home owners.

175.    As a direct and proximate result of these violations, the Plaintiff has suffered substantial damages.

176.    The Plaintiff has put the Defendants on notice prior to filing this lawsuit.  Plaintiff notified the Defendants that he intended to sue under the RICO statute but the Defendants scuffed at the Plaintiff and continued with their unlawful schemes to engage in mortgage foreclosure fraud.

177.    The Ocwen Enterprise is liable to the Plaintiff for treble damages together with all costs of this action.

**WHEREFORE**, Plaintiff seeks and award of damages which will be significant in order to deter the Defendants from continuing to engage in their unlawful and criminal conduct. Plaintiff seeks a damage award in excess of One Hundred Million Dollars and punitive damages in the amount of Five Hundred Million Dollars and for attorney fees and costs.  Plaintiff requests that this Court immediately enter and Order for pre-sale and/or permanent injunction stating that the Defendants have no ownership and/or property rights to the property known as 28437 N. 12th Way, Scottsdale, Arizona 85262.

## COUNT XV
### Fraud

178.    Plaintiffs repeat and reallege each and every allegation contained in the above paragraphs.

179.    Defendants engaged in the filing of a fraudulent Notice of Trustee Sale with the Maricopa Recorder's Office on November 12, 2014 then again on October 28, 2015.

180.    Defendants engaged in fraud by creating a false and fictitious Adjustable Rate Note.

181.    Defendants engaged in fraud by concealing the date of the Trustee Sales of November 12, 2014 and October 28, 2015.

182.    Defendants knew that the Notice of Trustee Sale documents were fraudulently prepared and filed.  They had no protectable rights to the Plaintiff's property whatsoever.

183.    When the Defendants filed the false Notice of Trustee Sale and recorded them they knew in fact these notices were fraudulently manufactured with the intent to defraud and deceive the Plaintiff out of his family home.

184.    The Plaintiff has been damaged by the acts of the Defendants.

**WHEREFORE**, Plaintiff seeks and award of damages which will be significant in order to deter the Defendants from continuing to engage in their unlawful and criminal conduct. Plaintiff seeks a damage award in excess of One Hundred Million Dollars and punitive damages in the amount of Five Hundred Million Dollars and for attorney fees and costs.  Plaintiff requests that this Court immediately enter and Order for pre-sale and/or permanent injunction stating that the Defendants have no ownership and/or property rights to the property known as 28437 N. 12th Way, Scottsdale, Arizona 85262.

## COUNT XVI

### Intentional and Emotional Distress

185.    Plaintiffs repeat and reallege each and every allegation contained in the above paragraphs.

186.    This cause of action for intentional infliction of emotional distress is premised on the outrageous conduct of the Defendants.

187.    The Defendants taking unlawfully of the Plaintiff's family home without any notice to the Plaintiff goes beyond all possible boards of decency. *Public Finance Corp v. Davis,* 66-Ill. 2d 85, 90, (1976).

188.    Defendants intended to cause or recklessly or consciously disregarded the probability of causing the Plaintiff to suffer severe emotional distress by defrauding the Plaintiff out of his family home.

189.    The Plaintiff suffers severe and extreme emotional distress and continues to suffer and endure it due the illegal conduct of the Defendants.

190.    The Defendants behavior has caused the Plaintiff to suffer loss, distress, grief, shame, humiliation and physical sickness due to the Defendants illegal behavior.

**WHEREFORE,** Plaintiff seeks and award of damages which will be significant in order to deter the Defendants from continuing to engage in their unlawful and criminal conduct. Plaintiff seeks a damage award in excess of One Hundred Million Dollars and punitive damages in the amount of Five Hundred Million Dollars and for attorney fees and costs. Plaintiff requests that this Court immediately enter and Order for pre-sale and/or permanent injunction stating that the Defendants have no ownership and/or property rights to the property known as 28437 N. 12th Way, Scottsdale, Arizona 85262. Plaintiff prays that this Court enter a finding that the Defendants have no lawful claim to the Plaintiff's property and award treble damages in an

amount to be proven at trial. To enter an order permanently enjoining Defendant Smith from ever acting as a Monitor for any Court ordered settlement. To enter an order permanently enjoining Ocwen Financial and any other of their related "shell" companies from ever engaging in the mortgage servicing business. To enter an order permanently enjoining the law firm of Bradley Arant Boult and Cummings, LLP, and its partners from ever representing a client involved in the mortgage foreclosure business. To enter an order permanently enjoining the law firm of Wright Finlay & Zak, LLP and its partners from ever representing a client involved in the mortgage foreclosure business.

## COUNT XVII
## Wrongful Foreclosure[15]

191.    Plaintiffs repeat and reallege each and every allegation contained in the above paragraphs.

192.    Defendants have unlawfully moved to foreclose on the Plaintiff's family home in a non-judicial Trustee Sale which is scheduled for October 28, 2015, without any notice to the Plaintiff and this violates the Plaintiff's Fifth and Fourteenth Amendment Rights.

193.    Plaintiff has objected to the fraudulent Trustee Sale ("**Exhibit 19**").

194.    Defendants are owed absolutely no debt from the Plaintiff and have refused to participate in any form of mediation with the Plaintiff prior to the fraudulent foreclosure.

**WHEREFORE**, Plaintiff seeks and award of damages which will be significant in order to deter the Defendants from continuing to engage in their unlawful and criminal conduct. Plaintiff seeks a damage award in excess of One Hundred Million Dollars and punitive damages in the amount of Five Hundred Million Dollars and for attorney fees and costs. Plaintiff requests

---

[15] Wrongful foreclosures are private debt collection procedures conducted without participation by the Court. The District of Columbia protects home owners from predatory practices of mortgages because of the lack of oversight during the non-judicial foreclosure process.

that this Court immediately enter and Order for pre-sale and/or permanent injunction stating that the Defendants have no ownership and/or property rights to the property known as 28437 N. 12th Way, Scottsdale, Arizona 85262. Plaintiff prays that this Court enter a finding that the Defendants have no lawful claim to the Plaintiff's property and award treble damages in an amount to be proven at trial. To enter an order permanently enjoining Defendant Smith from ever acting as a Monitor for any Court ordered settlement. To enter an order permanently enjoining Ocwen Financial and any other of their related "shell" companies from ever engaging in the mortgage servicing business. To enter an order permanently enjoining the law firm of Bradley Arant Boult and Cummings, LLP, and its partners from ever representing a client involved in the mortgage foreclosure business. To enter an order permanently enjoining the law firm of Wright Finlay & Zak, LLP and its partners from ever representing a client involved in the mortgage foreclosure business.

## COUNT XVII
### Slander of Title

195. Plaintiffs repeat and reallege each and every allegation contained in the above paragraphs.

196. Defendants have filed a false and malicious communication relating to the title of Plaintiff's property[16].

**WHEREFORE,** Plaintiff seeks and award of damages which will be significant in order to deter the Defendants from continuing to engage in their unlawful and criminal conduct. Plaintiff seeks a damage award in excess of One Hundred Million Dollars and punitive damages in the amount of Five Hundred Million Dollars and for attorney fees and costs. Plaintiff requests that this Court immediately enter and Order for pre-sale and/or permanent injunction stating that

---

[16] *Morris v. Morris*, 11 A. 3d 1273, (2015) D.C. Lexis 89 No 14-cv-219. Decided March 5, 2015.

the Defendants have no ownership and/or property rights to the property known as 28437 N. 12th Way, Scottsdale, Arizona 85262. Plaintiff prays that this Court enter a finding that the Defendants have no lawful claim to the Plaintiff's property and award treble damages in an amount to be proven at trial. To enter an order permanently enjoining Defendant Smith from ever acting as a Monitor for any Court ordered settlement. To enter an order permanently enjoining Ocwen Financial and any other of their related "shell" companies from ever engaging in the mortgage servicing business. To enter an order permanently enjoining the law firm of Bradley Arant Boult and Cummings, LLP, and its partners from ever representing a client involved in the mortgage foreclosure business. To enter an order permanently enjoining the law firm of Wright Finlay & Zak, LLP and its partners from ever representing a client involved in the mortgage foreclosure business.

## COUNT XVIII
### Law Action to Quiet Title[17]

197.    Plaintiffs repeat and reallege each and every allegation contained in the above paragraphs.

198.    Defendants have no interest in the subject property because no valid Note or Deed was ever properly assigned to it.

199.    The Adjustable Rate Note held by the Defendants is a forged document and it is invalid on its face and any claim the Defendants have to the subject property is extinguished.

200.    Plaintiff's related entity CSPPSP acquired the subject property in 2008, and Quit Claimed the property to Michael Stoller.

---

[17] It is well established that Court may hear a common law action to Quiet Title, secure title, or to remove obstacles which hinder its enjoinment. *In re Tyree,* 493 A.2d 317, (D.C. 1985).

201. Michael Stoller has superior title to the subject property. The original obligation under the Note and Deed were discharged through the bankruptcy of Philip Stone.

**WHEREFORE**, Plaintiff seeks and award of damages which will be significant in order to deter the Defendants from continuing to engage in their unlawful and criminal conduct. Plaintiff seeks a damage award in excess of One Hundred Million Dollars and punitive damages in the amount of Five Hundred Million Dollars and for attorney fees and costs. Plaintiff requests that this Court immediately enter and Order for pre-sale and/or permanent injunction stating that the Defendants have no ownership and/or property rights to the property known as 28437 N. 12th Way, Scottsdale, Arizona 85262. Plaintiff prays that this Court enter a finding that the Defendants have no lawful claim to the Plaintiff's property and award treble damages in an amount to be proven at trial. To enter an order permanently enjoining Defendant Smith from ever acting as a Monitor for any Court ordered settlement. To enter an order permanently enjoining Ocwen Financial and any other of their related "shell" companies from ever engaging in the mortgage servicing business. To enter an order permanently enjoining the law firm of Bradley Arant Boult and Cummings, LLP, and its partners from ever representing a client involved in the mortgage foreclosure business. To enter an order permanently enjoining the law firm of Wright Finlay & Zak, LLP and its partners from ever representing a client involved in the mortgage foreclosure business and for all other relief that the Court deems appropriate.

### Demand for Jury

Plaintiff hereby demands a trial of his claims by a jury of his peers to the extent authorized by law.

Christopher Stoller

Michael Stoller


## VERIFICATION

Under penalties as provided by law under Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct except as to matters therein stated to be on information and belief, and as much matters, the undersigned certifies as aforesaid that I verify believe the same to be true.

Christopher Stoller

Michael Stoller


Respectfully submitted,

Christopher Stoller
5700 N. Harlem Avenue, Suite 223
Chicago, IL 60631
(773) 746-3163


Michael Stoller
5700 N. Harlem Avenue, Suite 223
Chicago, IL 60631
(773) 746-3169

59

## CERTIFICATE OF SERVICE

I, Christopher Stoller, certify that the foregoing documents have been served on each of the following Defendants listed on the Service List via First Class U.S. Mail on October 27, 2015.

Christopher Stoller
5700 N. Harlem Avenue, Suite 223
Chicago, IL 60631
(773) 746-3163

Michael Stoller
5700 N. Harlem Avenue, Suite 223
Chicago, IL 60631
(773) 746-3169

# SERVICE LIST

**Ocwen Financial Corporation**
1661 Worthington Road, Suite 100
West Palm Beach, FL 33409

**William C. Erbey**
1661 Worthington Road, Suite 100
West Palm Beach, FL 33409

**Ronald Feris**
1661 Worthington Road, Suite 100
West Palm Beach, FL 33409

**John Britti**
1661 Worthington Road, Suite 100
West Palm Beach, FL 33409

**Timothy Hayes**
1661 Worthington Road, Suite 100
West Palm Beach, FL 33409

**Richard Cooperstein**
1661 Worthington Road, Suite 100
West Palm Beach, FL 33409

**Barry Wish**
1661 Worthington Road, Suite 100
West Palm Beach, FL 33409

**Catherine Dondzilla**
1661 Worthington Road, Suite 100
West Palm Beach, FL 33409

**Alan Bowers**
1661 Worthington Road, Suite 100
West Palm Beach, FL 33409

**Phylis Caldwell**
1661 Worthington Road, Suite 100
West Palm Beach, FL 33409

**Ronald Korn**
1661 Worthington Road, Suite 100
West Palm Beach, FL 33409

**William Lacy**
1661 Worthington Road, Suite 100
West Palm Beach, FL 33409

**Robert Salcetti**
1661 Worthington Road, Suite 100
West Palm Beach, FL 33409

**DeForest Socaries**
1661 Worthington Road, Suite 100
West Palm Beach, FL 33409

**Premium Title Service**
1000 Abernathy Road, NE 400 #200
Atlanta, GA 30320

**Western Progressive**
1000 Abernathy Road, NE 400 #200
Atlanta, GA 30320

**AltiSource Portfolio Services**
1000 Abernathy Road, NE 400 #200
Atlanta, GA 30320

**William Shepro**
100 Abernathy Road, NE 400 #200
Atlanta, GA 30320

**Kevin Wilcox**
100 Abernathy Road, NE 400 #200
Atlanta, GA 30320

**Office of the Mortgage Oversight**
301 Fayetteville Street, Suite 1801
Raleigh, NC 27601

**Joseph Smith**
301 Fayetteville Street, Suite 1801
Raleigh, NC 27601

**Bradley, Arant, Boult Cummings, LLP**
Birmingham Office
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203

**John Grenie**
Birmingham Office
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203

**Robert Maddox**Birmingham Office
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203

**J. Riley Key**Birmingham Office
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203

**Douglas Patin**Birmingham Office
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203

**Dana Lumsden**Birmingham Office
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203

**Phil Butler**Birmingham Office
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203

**Robert Patterson**Birmingham Office
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203

**Kimberly Martin**Birmingham Office
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203

**Margaret Oertling Gripples**
Birmingham Office
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203

**Wright Finlay & Zak, LLP**
4665 MacArthur Court, Suite 200
Newport Beach, CA 92660

**Robin Wright**
4665 MacArthur Court, Suite 200
Newport Beach, CA 92660

**T. Robert Finlay**
4665 MacArthur Court, Suite 200
Newport Beach, CA 92660

**Jonathan Zak**
4665 MacArthur Court, Suite 200
Newport Beach, CA 92660

**Philip Waliter**
4665 MacArthur Court, Suite 200
Newport Beach, CA 92660

**Kim Lepora**
4665 MacArthur Court, Suite 200
Newport Beach, CA 92660

**Timothy Andreu**
4665 MacArthur Court, Suite 200
Newport Beach, CA 92660

**Michael Cogan**
4665 MacArthur Court, Suite 200
Newport Beach, CA 92660

**Sharon Docherty**
4665 MacArthur Court, Suite 200
Newport Beach, CA 92660

**Robert Glenn**
4665 MacArthur Court, Suite 200
Newport Beach, CA 92660

**Mark Hanley**
4665 MacArthur Court, Suite 200
Newport Beach, CA 92660

**Robert Rasmussin**
4665 MacArthur Court, Suite 200
Newport Beach, CA 92660

**Edwin Rice**
4665 MacArthur Court, Suite 200
Newport Beach, CA 92660

**Alysa Ward**
4665 MacArthur Court, Suite 200
Newport Beach, CA 92660

**Chirag Patel**
1661 Worthington Road, Suite 100
West Palm Beach, FL 33409

**John Bombella**
1661 Worthington Road, Suite 100
West Palm Beach, FL 33409

## APPENDIX OF EXHIBITS

**EXHIBIT 1—ASSIGNMENT OF THE CAUSES OF ACTION**

**EXHIBIT 2—CONSENT JUDGMENT**

**EXHIBIT 3—COMPLAINTS FILED BY CHRISTOPHER STOLLER**

**EXHIBIT 4—QUIT CLAIM DEED**

**EXHIBIT 5—DISCHARGE OF DEBTS OF PHILIP STONE**

**EXHIBIT 6—RELEASE OF DEED OF TRUST AND FULL RECONVEYANCE**

**EXHIBIT 7—ADJUSTABLE RATE NOTE FILED ON MAY 2, 2006**

**EXHIBIT 8—NOTICE OF TRUSTEE SALE**

**EXHIBIT 9—EMAIL TO CHRAG PATEL**

**EXHIBIT 10—TRANSCRIPT OF MS. DEMARTINI**

**EXHIBIT 11—DECLARATION OF CHRISTOPHER STOLLER AND FORGED ADJUSTABLE RATE NOTE**

**EXHIBIT 12—OFFICIAL TRANSCRIPT**

**EXHIBIT 13—ORDER FINDING OCWEN IN CONTEMPT OF COURT**

**EXHIBIT 14—CONSENT ORDERS**

**EXHIBIT 15—EMAIL TO JOSEPH SMITH FROM CHRISTOPHER STOLLER**

**EXHIBIT 16—OFFICE OF MORTGAGE SETTLEMENT'S RESPONSE EMAIL TO CHRISTOPHER STOLLER**

**EXHIBIT 17—FRAUDLENT ASSIGNMENT OF DEED OF TRUST**

**EXHIBIT 18—CLASS ACTION COMPLAINTS AGAINST OCWEN**

**EXHIBIT 19—CHRISTOPHER STOLLER'S OBJECTIONS TO TRUSTEE SALE**